GEORGE BURKE ET AL. V. CHARLES H. FRYE ET AL.

FILED MARCH 5, 1895.   No. 6027.

1. **Agency : PROOF.** The fact of his agency cannot be established by the mere declarations of one assuming to act in that capacity. Without other proofs of authority, compliance with directions given by such assumed agent will not bind the party for whom he claims to act.

2. **Factors and Brokers : IMPLIED DUTY TO SELL AT DESTINATION.** Where a consignment was made to a commission merchant for sale without instruction, in the absence of an established usage to the contrary, of which the consignor has or must be presumed to have knowledge, the consignee's authority to sell cannot be delegated, and its exercise is limited to the place to which the consignment was originally made.

ERROR from the district court of Douglas county. Tried below before KEYSOR, J.

*Hall & McCulloch,* for plaintiffs in error.

*Charles Offutt* and *Charles S. Lobingier, contra,* cited, contending that agency could not be proved merely by declarations of the alleged agent: 1 Greenleaf, Evidence [14th ed.], sec. 114, and cases there cited; *Cleveland Stove Co. v. Hovey,* 26 Neb., 624; contending that plaintiffs in error owed the implied duty to sell at South Omaha: The authorities cited in the opinion, and *Phy v. Clark,* 35 Ill., 377–382.

RYAN, C.

In September, 1888, the firm of Frye & Bruhn shipped from Idaho to the firm of George Burke & Frazier, a live stock commission firm in South Omaha, sixty-two head of cattle. The firm first named had, previous to said shipment, written to that last named that the number of cattle proposed to be shipped was seventy-three. After shipment, however, there was written the following letter:

"Pocatello, September 9, 1888.

*"Messrs. Burke & Frazier, South Omaha*—Dear Sirs: Instead of shipping four car loads of cattle which we started with from Shoshone, we culled them some and sent three car loads, or sixty-three head, all pretty good cattle, which we hope you will sell to the best of your ability. We met Mr. Gallup here, and he wrote to you also. You can deposit the proceeds to our credit at First National Bank, Butte City, Montana. We sent a young man, and paid him, with the cattle, and hope he will come through all right. The cattle ought to be at North Platte Wednesday evening. If you have some man there we wish you would instruct him to look out for the cattle and see they leave North Platte all right. Wire us weight and price for cattle here at Pocatello.

"Yours respectfully,    Frye & Bruhn,
"Butte City, Mon.

"P. S.—The contract calls for four cars cattle. The agent here says we will have to straighten the matter in Omaha, as we only sent three from Pocatello. Perhaps you can fix it all right with the freight agent for us.

"Frye & Bruhn."

Upon receipt of the cattle the firm of George Burke & Frazier offered them for sale, one day receiving an offer of $3.65 per hundredweight, the next an offer of $3.85 per hundred. Neither of these offers were accepted, but instead the cattle were forwarded to Chicago and there sold by a commission firm at such figures as, compared with the highest offer made in South Omaha, netted a loss of at least the amount of the judgment rendered upon a suit therefor brought in the district court of Douglas county by Frye & Bruhn against George Burke & Frazier. During the trial there was an attempt to prove that the failure to sell in the South Omaha market was attributable to directions given by the "young man sent with the cattle," as he was described in the above letter. This question was presented

by asking J. A. Frazier, a member of the firm of George Burke & Frazier, what conversation was had between witness and the aforesaid young man at the time the cattle came in, supplemented by the following offer of proof to be elicited by it if there should be permitted an answer, to-wit: "We offer to prove by this witness that the three car loads of cattle in controversy were in charge of a man by the name of Frye, with whom the witness Frazier had a conversation with regard to the advisability of selling the cattle in South Omaha, or sending them on to Chicago; that in this conversation said Frye told the witness that the cattle should not be sold in South Omaha unless he could receive $4.10 per hundred and that they should hold them one day after the offer of $3.85 which has been testified to, and unless $4.10 could be obtained they should be shipped on to Chicago; that not being able to obtain the amount specified the cattle were shipped to Chicago and sold there." In *Dunphy v. Bartenbach*, 40 Neb., 143, it was said: "While an offer to prove is necessary to illustrate the purpose for which the question has been asked, we do not understand that by a mere offer to prove certain facts the materiality, relevancy, or competency of testimony which by no possible means could be responsive to the question propounded is presented for determination." The question propounded to Mr. Frazier required that he should state what conversation took place between himself and Mr. Frye. The offer of proof was, first, to establish the fact that Mr. Frye was the agent of Frye & Bruhn, and, second, to show what instructions as such agent he gave to Mr. Frazier. In *Stoll v. Sheldon*, 13 Neb., 207, this court made use of the following language: "In the case of *Graul v. Strutzel*, 53 Ia., 712, it was held by the supreme court of Iowa that an agent's authority cannot be shown by his own testimony. That is, where an agent is acting under a special authority, the principal will only be bound to the extent of the authority. An attorney in releasing a surety

is acting under a special power which must be proved. As there is an entire failure of proof upon that point, the court did not err in directing a verdict for the defendant in error." As was pointed out in *Nostrum v. Halliday*, 39 Neb., on page 831, the denial of the right to prove an agent's authority by his own testimony attributed to the supreme court of Iowa, was but a *lapsus linguæ*, and that the intention was evidently to state the familiar proposition that an agent's authority cannot be proved by his own mere declaration. This proposition without question embodies sound law.

The first matter to be established by the testimony of Mr. Frazier was that in a conversation had with Mr. Frye the witness was told by Mr. Frye that he was in charge of the cattle; in other words, as related to the subject-matter of this action, that he was the agent of Messrs. Frye & Bruhn with respect to said cattle. This, under the rule above recognized, was clearly incompetent. From this it inevitably resulted that the second matter proposed to be proved—that is, that this Mr. Frye gave certain directions, as agent, regarding the disposition to be made of this stock under certain contingencies—was not competent unless founded upon authority independent of that above contemplated. No such showing was attempted. So far as the proofs go there was nothing to indicate to what extent, if at all, this Mr. Frye represented, or was authorized to act for Messrs. Frye & Bruhn with respect to the cattle with which he had been sent from Pocatello except as this may be assumed from the letter to George Burke & Frazier. A careful consideration of the language employed and of the circumstances under which this letter was written satisfies us that the district court was correct in its assumption that the firm of George Burke & Frazier had no right to act upon or be governed by any directions given by the young man who had simply been sent with the stock which said firm was expected to sell. In various ways implied au-

thority of George Burke & Frazier as commission mer-
chants to forward the cattle received by them at South
Omaha to another market was presented. The letter of
the consignor in no way indicates that the consignee in
turn might consign to Chicago. While the commission
merchants named sometimes sent stock to Chicago to be
sold the evidence discloses the fact that in such cases the
sales were conducted by commission brokers in Chicago,.
and that George Burke & Frazier had no office in Chicago
for that purpose. There is no proof whatever that the
original consignors knew that under any circumstances.
George Burke & Frazier forwarded consignments from
South Omaha to Chicago. There could therefore be en-
tertained no presumption that such procedure would be ap-
proved. The right of commission merchants to take this
course, if it at all exists, must be implied from the mere
fact of being employed in that capacity. In *Phillips v.
Scott*, 43 Mo., 86, there was used the following apposite
language: "It would seem to be altogether reasonable, as
well as consistent with the general principles of law regu-
lating agency, to presume that, where a consignment is
made to a factor for sale unaccompanied with instructions
from the principal and in the absence of an established
usage of trade to the contrary, it is intended to be sold at
the place of residence of the factor. The intent of the
principal, which in such a case is to be gathered from the
circumstances alone, fixes the character of the contract be-
tween the parties as to the place of sale, and the factor is
not at liberty to disregard it." The same doctrine pre-
vailed in *Catlin v. Bell*, 4 Camp. [Eng.], 183; *Kauffman
v. Beasley*, 54 Tex., 563; *Grieff v. Cowguill*, 2 Dis. [O.],
58; Smith, Mercantile Law, 148; Dunlap's Paley, Agency,
177, and Story, Agency, secs. 33 and 34. In this case
there was an offer to prove that among South Omaha live
stock commission merchants it was customary, when prices
offered were unsatisfactory at that place, to send cattle for-

ward to Chicago for sale in that market. There was no claim that the firm of Frye & Bruhn had knowledge of this usage, neither was there a pretense that this custom was anything but local and confined to South Omaha. It would be very unfair by mere implication to bind shippers from distant points like Pocatello by a local usage peculiar to South Omaha, solely because of an election to consign to commission merchants at that market. These general observations cover all the questions presented in this court for consideration. The judgment of the district court is

AFFIRMED.