### Enoch H. Fudge v. The Seckner Contracting Co.

1. PRINCIPAL AND AGENT—*Unauthorized Employment of a Sub-agent by the Agent Does Not Render the Principal Liable.*—The mere fact alone that an agent employs a sub-agent to do the work, to do which the agent was employed, does not make the principal liable for what the agent has himself, unauthorized, promised to pay the sub-agent.

Assumpsit, for services. Trial in the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Verdict and judgment for defendant by direction of the court. Appeal by plaintiff. Heard in this court at the March term, 1898. Affirmed. Opinion filed January 26, 1899.

Appellee, the Seckner Contracting Company, built a system of water works for the East Chicago Water Works Company, in part payment for which it was to receive $70,000 of East Chicago Water Works Company bonds. Hatch, the president of the East Chicago Water Works Company, wrote the following letter to appellant:

"CHICAGO, October 9, 1894.

E. H. FUDGE, Esq., Chicago, Ill.

DEAR SIR: In the event P. K. Tyng & Co., of Buffalo, N. Y., purchase the $70,000 issue of East Chicago Water Works Co. bonds at ninety-five cents on the dollar and accrued interest, I hereby agree to pay you the difference between the amount realized thereby and ninety cents on the dollar and accrued interest.

Very respectfully,

N. P. R. HATCH,

President East Chicago Water Works Company."

This letter was a formal proposition made after a number of conversations in relation to the matter. Appellant testified that in the course of such conversations the following occurred:

"Hatch said '$10,000 of these bonds belong to me personally, and the other $70,000 belong to the contractors who were constructing the work.' He did not say who those contractors were, but that he had a right to sell them."

The proposition was accepted by Mr. Fudge, and in October, 1894, by his procurement, P. K. Tyng & Co., of Buffalo, N. Y., entered into a contract with Hatch to purchase $80,000 worth of East Chicago Water Works Company bonds. Some delay having occurred in procuring and forwarding to Tyng & Co. the opinion of attorneys and other papers relating to said bonds, Tyng & Co. did not receive and pay for $14,000 worth of these bonds. About February 4, 1895, a telegram was sent to Tyng & Co. by N. P. R. Hatch, as follows:

"CHICAGO, Feb. 4th, 1895.

If you will take $5,000 East Chicago bonds to-day or to-morrow, Chicago delivery, we will release you from balance and all claims for damage. What shall I do with New Mexico certificates enclosed me?

N. P. R. HATCH."

Thereafter Tyng & Co. received another dispatch from Mr. Hatch stating that the Seckner Contracting Company had demanded the bonds of him, and he could not deliver them to Tyng & Co. Immediately following this last dispatch came a letter to Tyng & Co. from the Seckner Contracting Company, as follows:

"CHICAGO, Feb. 5th, 1895.
MESSRS. P. K. TYNG & Co., Union Central Life Building, Buffalo, New York.

GENTLEMEN: We send you to-day by American Express Company $5,000 worth of East Chicago Water Works bonds with sight draft on you for $4,804.16, in accordance with your telegraphic message to N. P. R. Hatch to-day, and if this draft is paid we agreed to release you and Mr. Hatch from any damage on account of non-fulfillment of contract for the purchase of the total issue of East Chicago Water Works bonds.

Yours respectfully,
SECKNER CONTRACTING COMPANY,
J. H. BROWN, Treasurer."

Fudge v. Seckner Contracting Co.

Upon receipt of this letter Tyng & Co. accepted the bonds so sent by the Seckner Contracting Company and paid the company therefor the sum above named in the letter.

The plaintiff having afterward made demand upon Hatch for his commission and not having received the same, made a demand in writing upon the Seckner Contracting Company for the sum of $3,500 commission for the sale of the $70,000 worth of the bonds. This demand was delivered to J. H. Brown, treasurer of the Seckner Contracting Company, who then stated to Mr. Fudge that the Seckner Contracting Company had in its hands the commission due on the bonds last taken and paid for by Tyng & Co., namely, $250. Brown, accompanied by Mathis, an attorney, went with Fudge to the office of Hatch, where a demand was made that he pay over the $3,500 commission upon the other bonds, and the accrued interest, neither of which he had as yet paid. Hatch then stated that he was the owner of the bonds and that the Seckner Contracting Company had nothing to do with the matter.

There was evidence which tended to show that Brown, the treasurer of appellee, made statements after the sale of the bonds, to the effect that appellee was owner of the bonds, and that Hatch sold them for appellee; also that Hatch had upon some sales made, represented to appellee that he was obliged to allow part of purchase price paid for the bonds to a broker for his services in effecting such sales.

Appellant testified that Brown promised that the $250 should be paid to him.

After a number of interviews between Brown and appellant, the former stated, in response to a demand by appellant for the $250 of commissions, "Well, there is a question come up in my mind whether that money belongs to you or Hatch; we will pay it to whoever it belongs."

At the close of the evidence for appellant, then plaintiff, the court, on motion of appellee, instructed the jury to find for appellee, the defendant.

FREDERICK A. WILLOUGHBY, attorney for appellant.

HOWARD AMES, attorney for appellee; EUGENE CLIFFORD, of counsel.

MR. JUSTICE SEARS delivered the opinion of the court.

It is contended by counsel for appellant that the trial court erred in thus peremptorily directing a verdict.

In support of such contention it is urged, first, that the evidence would warrant a conclusion by the jury that Hatch was the agent of appellee, authorized to procure a broker, and that acting under such authority he did employ appellant; and, secondly, that if this were not so, yet the fact of Hatch being appellee's agent to sell the bonds would warrant the employment of appellant as a sub-agent, and that such sub-agency was ratified by appellee.

The maintenance of one or the other of these two propositions is essential to a possible right of recovery. We are unable to assent to either.

The evidence not only does not establish that Hatch was employed by appellee to procure a broker, but, on the contrary, there is no evidence tending thereto.

The other proposition is, that the nature of the employment of Hatch by appellee, i. e., to sell the bonds, was such an employment as would, as a matter of law, authorize Hatch to procure a broker as a sub-agent for appellee, and by such employment obligate appellee to pay the broker's commissions. To sustain this proposition we find no authority in the cases cited elsewhere. Against it is the authority of many decisions. Corbett v. Schumacker, 83 Ill. 403; Solly v. Rathburn, 2 Maule & Selw. 298; Cockran v. Irlam, Id. 301; Paddock v. Colby, 18 Vt. 485.

If it could be said that appellee had employed Hatch to procure a broker, then appellant could, as is urged by counsel, insist upon his rights against appellee, the undisclosed principal, even although appellee knew nothing of the agency of Hatch when the transaction was had. But no agency of Hatch for any such purpose is disclosed by the evidence. On the contrary, whatever evidence bears upon this question shows that Hatch was acting in his own behalf in

efforts to dispose of the bonds for the appellee and for a compensation to be paid to and received by him.   If, in performing the work for which he was to be compensated, he chose to employ others to assist him, his so doing could in no measure obligate appellee.   There is no evidence showing or tending to show a ratification of any employment of appellant by Hatch on behalf of appellee.   After the sale a demand in writing was made upon appellee by appellant for his commissions, and service of the demand was acknowledged, but no agreement was entered into to pay the amount demanded.

But it is contended as to the $250 which Brown admitted was still in appellee's hands, that Brown obligated appellee to pay this amount to appellant.   No authority is shown in Brown to thus undertake for appellee to pay to appellant money which belonged to Hatch.   In the absence of such showing it is unnecessary to inquire as to the sufficiency of any consideration for the making of the alleged agreement.

The theory of appellant's case was disclosed by the bill of particulars filed with the declaration, the common counts. It is as follows:

### " Bill of Particulars.

"On the 9th day of October, A. D. 1894, at Chicago, Newton P. R. Hatch, on behalf of said Seckner Contracting Company, and as said·company's agent thereunto authorized, made a proposition to the plaintiff that if the plaintiff would procure P. K. Tyng & Co., of Buffalo, New York, to purchase the $80,000 issue of East Chicago Water Works Company bonds at ninety-five cents on the dollar and accrued interest, said Seckner Contracting Company would pay to plaintiff the difference between the amount realized thereby and ninety cents on the dollar and accrued interest, which proposition said plaintiff then and there accepted; and afterward procured said P. K. Tyng & Co. to purchase said bonds at ninety-five cents on the dollar and accrued interest, being the sum of $80,000, whereby and by virtue of said proposition and acceptance the said Seckner Contracting Company then and there became liable to pay and became indebted to said plaintiff in the sum of $4,900, said sum being the difference between the amount

for which said bonds were purchased by P. K. Tyng & Co. and ninety cents on the dollar and accrued interest; neither said sum of $4,000 nor any part thereof having been paid to plaintiff, although demand therefor has been made on said defendant by said plaintiff, this suit is brought to recover said amount so due and payable to the plaintiff as aforesaid."

Appellant failed to present any evidence which would sustain a recovery upon this theory, or upon any other, and none which the court was bound to submit to the jury. Hence, there was no error in directing a verdict. The judgment is affirmed.