THOMAS A. CAFFEY ET AL. v. HENRY TINDALL ET AL.

[56 South. 177.]

1. NUNCUPATIVE WILL. *Construction. Presumption. Instructions. Probate.*

A description in a will as "all my property" includes both real and personal property.

2. PROBATE OF NUNCUPATIVE WILL. *Instructions.*.

In a proceeding to probate an alleged nuncupative will which purported to devise "all" of the testators property, it was error for the court to give an instruction to contestants that "the law presumes and in the absence of evidence to the contrary, conclusively presumes that the testator, if he was sane, knew that real estate would not pass under a nuncupative will." As the knowledge or want of knowledge on the part of the testator is a fact to be proven in the same manner that other facts are proven.

3. SAME.

The law does presume, for some purposes, that all persons know the law; but not for the purpose of supplying evidence of a fact material to the controversy.

APPEAL from the chancery court of Montgomery county.

HON. I. T. BLOUNT, Chancellor.

Petition by Thos. A. Caffey et al. against Henry Tindall et al. for the probate of a nuncupative will. From a decree dismissing the petition proponents appeal.

The facts are as follows:

One W. M. Caffey, a single man, died without living parents, brothers, or sisters, or children of brothers or sisters. At the time of his death, his nearest relatives, according to the law of descent and distribution, were his mother's brothers and sisters.

Deceased was an epileptic, and subject to attacks of epilepsy for a number of years prior to his death. Ex-

cept during these attacks, he seemed to be entirely sane and rational, and had proved to be a good business man. He had considerable real and personal estate, most of which had been inherited by him from his father; he being an only child. After his death, one of the appellees, an uncle on his mother's side, qualified as administrator of the estate, alleging that he had died without will.

Afterwards the appellants, who are his cousins on his father's side, being the descendants of his father's brothers and sisters, filed a petition in the chancery court for the probate of what purported to be a nuncupative will, made in the presence of a cousin, R. F. Caffey, and a negro servant, Manuel Caffey, who called upon deceased, about a week before his death, at the hotel. The purported will is in the following language: "It is providential that you and Manx are here together. I am on my deathdead. I cannot recover. My father was always wanting to make a will and my father's will was that he wanted his brother's and sister's children to have all of his property. My father's wish is my will. I want my father's brother's and sister's children to have by property."

The contest is over the personal property, since real estate could not pass by nuncupative will. The proponents offered to establish this will by the witnesses above named, and the objectors introduced testimony attempting to impeach these witnesses.

Issue being tendered, the court heard the testimony, submitted the case to a jury under instructions, and the jury found against the proponents, and the court accordingly dismissed their petition for probate. On appeal one of the errors assigned is the granting of instruction No. 20, asked by the defendants, which is as follows: "The law presumes, and in the absence of evidence to the contrary, conclusively presumes, that Billy Caffey, if he was sane, knew that real estate would not pass under a nuncupative will."

*V. D. Rowe, Dunn & Thompson* and *Flowers, Alexander & Whitfield,* for appellants.

We say that he court erred in giving instruction No. 20 for the defendants. That instruction is as follows:

"The law presumes and in the absence of evidence to the contrary conclusively presumes that Billy Caffey, if he was sane, knew that real estate would not pass under a nuncupative will."

Counsel got this instruction in order that argument might be made to the jury that Billy Caffey would have wanted his real estate to go to his father's nieces and nephews, if he had wanted his personal property to take that course and that since he did not make a will which would carry the real estate it is unreasonable to believe that he made a will at all. They argued to the jury, as any other lawyer would, that the wish of Billy's father was that all of his property should go to his nieces and nephews; and if Billy had undertaken to execute his father's wish and will he would have made a will in such form as to control the descent of the real estate. This furnished a very strong argument. This instruction might have turned the decision against these appellants, defendants urged improbabilities. They had the court by this instruction to give them one fact which had not been proven and that fact was knowledge on the part of Billy Caffey that he could not control his real estate by an oral will. Billy may have had such information, or he may not. There may be a presumption of law that one has knowledge of the law but there is no such presumption of fact. It was desired here to use this assumed knoweldge as a fact, as a piece of evidence. The instruction is just as strong as it can be made. The jury is told that the law conclusively presumes that Billy Caffey had this information. In other words the jury was told that it might be assumed, for whatever it was worth, that when Billy Caffey spoke these words, if he did speak them, he knew that he could not in this manner

control the distribution of his real estate. Or it is the same as if the jury had been told that:

Since there is no evidence to the contrary, you may assume as a proven fact that on the 14th day of May, 1908, Billy Caffey knew that he could not control the distribution of his real estate with the verbal will. You may take this established fact into consideration in making up your mind as to whether he did in fact undertake to make a will as testified by these witnesses for proponents.''

We understand that *ignorantia juris non excusat.* We know that one who is sued on an undertaking of any kind cannot defend by showing that he did not understand the full legal meaning of his act. That is not, however, the situation here. We are not trying to give to the act of Billy Caffey a meaning or effect the law did not give it on the ground that he did not understand the law. But the contestants had the court to charge knowledge of the law up to Billy Caffey in order that they might use it as a fact to base their argument upon. There is no conclusive presumption that one knows the law even where there is any presumption at all. *Hess* v. *Culver* Mich.), 18 Am. St. Rep. 421.

In *Black* v. *Ward* (Mich.), 15 Am. R. 162, it appeared that a note made in Michigan, but payable in Canada, was to be paid in ''Canada currency,'' and it was decided that the words meant no more than ''Canada money'' or ''Canada dollars.'' It was replied that this construction of the contract would render the words surplusage; that the law would give the contract this meaning in the absence of these words; that a note payable in Canada necessarily called for the use of Canada money. And it was said that this is the law and that the maker of the note is presumed to have known the law and to have written the words ''Canada currency'' into the note with full knowledge of the law, and therefore must have meant something by using the words. It was insisted

that in construing the contract and ascertaining the meaning intended to be given to these words, it should be presumed that the words were used with full knowl- edge of the law and were therefore intended to give to the contract a meaning which the law would not give to it with those words omitted. The fact of knowledge was sought to be established by the presumption in order that this fact might be used in argument as furnishing a reason for the position that the words "Canada cur- rency" were intended to add something to the contract. The court said:

"It is urged that this is superfluous, and that, as every one is presumed to know the law, it would not have been put in except for some purpose which would change its legal import. This objection appears to us to be far fetched and unreasonable. The case cited above suffi- ciently answer it. A very large proportion of the bonds and deeds drawn up in this country describe the money secured or paid, as 'lawful money of the United States,' when there can be no other lawful money in the republic, and when it is clearly superfluous.

But the maxim referred to in regard to a knowledge of the law is misapplied. No man can avoid a liability as a general thing because he is ignorant of the law. This is an essential rule of society. But the law is not so senseless as to make absurd presumptions of fact. In *Regina* v. *Mayor of Tewkesbury*, L. R. S. Q. B. 628, this supposed maxim was very clearly explained, and it was held that, where an actual knowledge was in question, the legal presumption could not supply it. Blackburn, J., uses this language:

"From the knowledge of the fact that Blizard was mayor and returning officer, was every elector bound to know as matter of law that he was disqualified? I agree that ignorance of the law does not excuse. But I think that in *Martindale* v. *Falkner*, 2 C. B. 719, Maule, J., cor- rectly explains the rule of law. He says: 'There is no

presumption in this country that every person knows the law; it would be contrary to common sense and reason, if it were so.' In *Jones* v. *Randall,* Cowp. 38, 40, Dunning, *arguendo,* says: 'The laws of this country are clear, evident and certain; all the judges know the laws, and knowing them administer justice with uprightness and integrity.' But Lord Mansfield, in delivering the judgment of the court, says: 'As to the certainty of the law mentioned by Mr. Dunning, it would be very hard upon the profession if the law was so certain that everybody knew it; the misfortune is that it is so uncertain that it costs much money to know what it is, even in the last resort.' It was a necessary ground of the decision in that case that a party may be ignorant of the law. The rule is that ignorance of the law shall not excuse a man or relieve him from the consequences of a crime, or from liability upon a contract. There are many cases where the giving up a doubtful point of law has been held to be a good consideration for a promise to pay money.' The learned judge proceeds further to the same effect, and the judgment in that case, as in the one cited from Lord Mansfield, rested upon the sole ground that a person was not presumed as a matter of fact to know the law relied on to disqualify him as a voter.''

The effect of this instruction was to give the defendants the benefit of evidence which they had not introduced and of a fact which they had not proved. No one knows whether Billy Caffey knew the law of nuncupative wills. He may have known it. He may not. But this instruction required the jury to assume for the purposes of their consideration that he did know the fact of law that real property cannot be controlled by a nuncupative will. Very few men in Mississippi know this. Regardless of what the jury might have thought as to the attitude of Billy Caffey's mind they were required to believe that he had the knowledge of the law.

We submit that in this case any error should call for a reversal. As the record shows there have been two mistrials showing that the men have trouble in making up their minds on the issue as to whether there was a will. And the court will see that under these circumstances the jury sitting on the case have had trouble in reaching a verdict, even with these extra and improper burdens and handicaps placed upon the prononents. The mistakes in the admission of evidence and in the exclusion of evidence operated strongly against us. And added to all of this we have had this instruction No. 20 to deal with which injected this additional unproven fact into the case and then worse still we have had it exacted of us to produce such evidence as that the jury might be able to characterize it as clear and indisputable. This instruction reaches the limit of unreasonableness. And certainly no instruction in a case of this kind could be more disastrous.

*Hill & Knox,* for appellee.

We contend that under the evidence in this cause that the court below should have given the peremptory instruction which was asked by the contestants and the case should not have gone to the jury at all, but inasmuch as the court below saw fit to submit the case to the jury, then we respectfully submit that the court correctly charged the jury as to the law for and on behalf of the contestants, and that all of the instructions that were granted by the court for and on behalf of the contestants are fully and clearly warranted by the authorities herein before cited.

Even though the court should find that there was any error committed by the court below admitting or rejecting any testimony of any witness or in granting or giving any of the instructions for and on behalf of the contestants, yet we respectfully contend that this court will not reverse this case for any error that may have been

committed, if any, by the court below, for the correct result was certainly reached in this case by the jury.

*W. C. McLean,* for appellee, filed an elaborate brief dealing with other points in the case than the point decided by the court in its opinion.

Argued orally by *J. N. Flowers* and *J. T. Dunn,* for appellant, and *W. T. Knoy* and *Wm. C. McLean,* for appellees.

SMITH, J., delivered the opinion of the court.

The alleged testator died seised and possessed of both real and personal property, all of which is necessarily included in the description, "all my property," contained in the alleged nuncupative will, and would pass thereby, were it lawful to devise realty by parol.

At the request of contestants, the court charged the jury that "the law presumes, and, in the absence of evidence to the contrary, conclusively presumes, that Bill Caffey, if he was sane, knew that real estate would not pass under a nuncupative will." If the testator in fact knew that real property would not pass under a nuncupative will, it is hardly probable that he would have attempted to so devise such property, and consequently the jury, on account of this fact alone, would have been warranted in seriously doubting the making of the will at all. That the will attempted to pass real estate would be of no assistance to the jury in determining whether or not the will was made, if the testator in fact had no knowledge at all as to what property the law would permit to pass under it.

In this connection, the knowledge or want of knowledge on the part of testator is a fact to be proven in the same manner that other facts are proven. The law does presume, for some purposes, that all persons know the law; but not for the purpose of supplying evidence of a fact material to the controversy. Under this instruction,

as there was no evidence to the contrary, the jury were instructed to conclusively presume the existence of a fact necessary to be established by evidence, before the jury could draw any inference therefrom, and of which there was no evidence at all. The writer of this opinion is strongly inclined to the view that the evidence of the *regatio testium* fails to meet the requirements of the statute; that for this reason the court should have directed a verdict for appellees; and that consequently the error committed by the court in granting the instruction hereinbefore set out was harmless. A majority of the court, however, think otherwise.

*Reversed and remanded.*