[No. 13661.    Department One.    December 5, 1916.]

SHERWOOD BROTHERS, INCORPORATED, *Respondent*, v.
SEATTLE FRUIT & PRODUCE AUCTION COMPANY,
*Appellant*.[1]

FACTORS—COMMISSIONS—CONTRACT—EVIDENCE—FINDINGS.   Where
parties disagreed as to the terms of a special contract for the sale
of goods on commission, the fact that the court did not find the
contract exactly as claimed by either party, but adopted the testi-
mony of each in part, does not amount to a finding that there was
no meeting of the minds upon any definite contract.

SAME — AUTHORITY — EMPLOYING SUBAGENTS.   A factor operating
under an express contract to market fruit for a commission has no
power to employ subagents at the owner's expense and deduct their
commissions, and the power is not implied from the mere fact of
employment.

SAME—COMMISSIONS—CONTRACT—EVIDENCE — SUFFICIENCY.   Find-
ings that fruit was to be marketed for a specified commission, with-
out deductions for the commissions of subagents in the east, are
sustained where that version of the contract was corroborated by
the fact that the amount of such deductions was not agreed upon
when the contract was made, and that both the fact and the amount
of the deductions made were persistently concealed in making state-
ments of all the other expenses incurred.

Appeal from a judgment of the superior court for King
county, Albertson, J., entered April 15, 1916, upon findings
in favor of the plaintiffs, in an action for an accounting,
tried to the court.    Affirmed.

*Flick & Frater*, for appellant.

*Wettrick, Anderson & Wettrick* and *Brown, Peringer &
Thomas*, for respondent.

ELLIS, J.—Plaintiff, a commission merchant of Belling-
ham, Washington, brought this action against defendant,
a commission merchant of Seattle, to recover a balance
claimed to be due as the proceeds of the sale of certain ber-
ries and other small fruits shipped by plaintiff to defendant

[1]Reported in 161 Pac. 371.

at Grand Forks, North Dakota, for sale on commission.
There were three car loads of fruit, shipped, respectively,
June 25, June 30, and July 2, 1915, by express from Bel-
lingham, consigned to defendant at Grand Forks. The fruit
was delivered at that point to defendant's agent, to whom
the bills of lading were forwarded. Though a conversion
was claimed as to the last car, at the trial the action re-
solved itself into one for an accounting.

We find it unnecessary to review the pleadings. Both
sides claimed that the shipments were made under an express
oral agreement entered into between plaintiff and defendant
early in June, 1915, at Bellingham, through S. A. Sherwood,
plaintiff's president, and George Bryant, defendant's presi-
dent. There was a sharp conflict in the evidence as to the
terms of this agreement. Sherwood testified, in substance,
that it was agreed that defendant would handle the berries
for a commission of ten cents a case and ten per cent for the
other fruits, and would guarantee one dollar a case for the
berries, but that nothing was said as to any commission to
be charged by any broker in the Dakotas, where it was
contemplated the fruit would be marketed. Bryant testified
to the effect that defendant was to receive as its commission
ten per cent of the net returns to Seattle, that there was no
guaranty, and that it was understood that whatever com-
mission was necessary would be charged and deducted as an
item of expense at the other end. The evidence showed that
the berries and other fruits were sold to the retail trade in
the Dakotas by defendant through O. J. Barnes & Company,
a commission house at Grand Forks, North Dakota, and
that Barnes & Company received a commission of fifteen per
cent. The sale statements rendered by defendant to plain-
tiff did not disclose the fact that any commission was de-
ducted for marketing the fruit in the Dakotas. It fairly
appears that plaintiff did not know that Barnes & Com-
pany had anything to do with the matter until late in August,

18—93 WASH.

1915, some time after statements on all the sales had been rendered, and did not know that any commission, save defendant's ten per cent, had been deducted until certain depositions were taken at Grand Forks late in December, 1915.

The trial court did not find the contract wholly in accordance with the claims of either party, but expressed the view that the agreed commission was ten per cent on the net proceeds of all of the berries and fruit; that there was a guaranty of one dollar a case only as to the first car, which guaranty was met, and that there was no agreement authorizing defendant to deduct any commission paid to the Dakota broker. Judgment was rendered for plaintiff for the sum of $1,149.75, which, it seems to be conceded, is the amount which was deducted as the commissions of Barnes & Company, and for costs. Defendant appealed.

Because the court did not find wholly with the claims of either party, appellant first contends that the court, in substance, found that there was no definite contract, in that there was no meeting of the minds of the parties, and that, therefore, appellant was entitled to a reasonable compensation for its services; hence was warranted in deducting the commissions paid in Dakota, with the express charges and other usual marketing expense, and in retaining ten per cent of the resulting net proceeds. This position is not tenable. Both parties asserted that there was a special contract. They disagreed only as to its terms. What its terms were was the specific question for the court's determination. The fact that the court did not find the agreement exactly as claimed by either party, but found as to one part with the appellant's evidence and as to another part with the respondent's evidence, was not a finding, as the appellant asserts, that the minds of the parties never met. There is no rule of law requiring the court, on any controverted question of fact, to adopt as true *in toto* the evidence on either side, or as an alternative, find the evidence on both

sides false *in toto*.   The purpose of trying questions of fact
is to determine the truth from all of the evidence.

It is next contended that the court committed fatal error
in holding that the burden of proof was upon appellant to
show an agreement on respondent's part that the commis-
sion of fifteen per cent paid to the Dakota broker should be
deducted as an expense chargeable to respondent.   Appel-
lant was admittedly respondent's agent operating under an
express contract to market the fruit for a commission.   In
the absence of specific authority, it had no power to employ
subagents at respondent's expense.   That authority cannot
be implied from the mere fact of appellant's employment.
*Vashon Fruit Union v. Godwin & Co.*, 87 Wash. 384, 151
Pac. 797; *Fudge v. Seckner Contracting Co.*, 80 Ill. App.
35; *Burke v. Frye*, 44 Neb. 223, 62 N. W. 476; *People's
Bank of Pratt v. Frick Co.*, 13 Okl. 179, 73 Pac. 949.   The
burden was, therefore, upon appellant to show that, by the
terms of its employment, it was authorized to employ sub-
agents and charge a commission for their services.   The
court committed no error in so holding.

Finally, it is contended that, in any event, the evidence
clearly established the contract as claimed by appellant.   As
to whether it was understood that appellant would market
the fruit through commission merchants, and would charge
as an expense the commission paid to such merchants, the
direct evidence, as we have noted, was in the sharpest con-
flict.   The court was justified, therefore, in taking into con-
sideration every circumstance tending to support either side.
If in the original negotiations respondent's president was
advised that it would have to bear the commission of a broker
in the middle west, it is inconceivable that he would not have
asked what that commission would be and insisted upon
something more definite than appellant's version of the agree-
ment.   It is a further significant fact that the accounts of
sales rendered by appellant to respondent, which are in evi-
dence as exhibits, show that, though the transportation

charges, drayage, labor and repacking charges were frankly disclosed and deducted as legitimate expenses, and, also, appellant's ten per cent commission on the balance, no commission to the Dakota broker was shown, either as an expense or otherwise, nor on the face of the statements deducted. An examination of the statements fails utterly to disclose that any commission whatever, save appellant's ten per cent, was paid to any one. Whatever the contract, good faith would dictate that these commissions paid at the other end should be shown if deducted, as they admittedly were. It seems only reasonable that, had respondent ever agreed to bear these commissions, as appellant claims it did, they would have been shown, just as other deductible expenses were shown. That they were not shown raises a strong inference that appellant desired to conceal the fact that they had been paid and deducted from the gross proceeds, lest respondent might object.

In other relations involving agency, such a clandestine course of conduct would be considered at least questionable, and we know of no reason why it is less so where the parties are commission merchants. The rule requiring open disclosure and full accounting has its basis in considerations of common honesty, and applies to commission merchants as well as to others. Here the concealment was persistent. Throughout the correspondence, though Barnes was sometimes mentioned, he was referred to as "our representative," never as an independent broker to whom a commission was paid. Appellant's answer to interrogatories propounded by respondent late in November, 1915, stated, with regard to each car, that the fruit was "sold to O. J. Barnes," not that it was consigned for sale on commission. So far as the record before us indicates, the fact that a commission was paid and in what amount did not appear until the deposition of Barnes was taken, in which it was disclosed that Barnes & Company had taken the berries on commission and had actually charged a commission of fifteen per cent for which ap-

pellant did not account.   It is no answer to say that it is inequitable that appellant should refund commissions which it actually paid in sums larger than the commissions which it received and that respondent, in any event, received the full market price for its berries.   Appellant, at all times, knew its own facilities for disposing of the berries better than any one else knew them.   If it wanted to avoid the dispute here presented, it should have disclosed the facts when it made the contract, and then advised respondent that the added commission would be charged as expenses.   That it did not do so is positively asserted by respondent and is strongly corroborated by the studied course of concealment, both of the fact and of the amount of commissions charged at the other end.   Upon the whole record, we cannot say that the evidence preponderates against the court's findings.   The court having found that there was no contract authorizing the deduction of these commissions, the case falls distinctly within our decision in *Vashon Fruit Union v. Godwin & Co., supra.*

The judgment is affirmed.

MORRIS, C. J., MAIN, HOLCOMB, and CHADWICK, JJ., concur.