[Civ. No. 8172. First Appellate District, Division One.—March 11, 1932.]

CORNELIUS MURPHY et al., Appellants, v. M. SHEFTEL et al., Respondents.

Frank L. Guerena and Lionel B. Browne for Appellants.

Jerome H. Bayer and G. C. Ringole for Respondents.

THE COURT.—As the result of negotiations which commenced in February, 1926, plaintiffs in April of the same year purchased from defendants a lot fronting on Washington Street in San Francisco upon which was situated a three-story frame building containing fifteen two-room apartments, and paid therefor the sum of $55,000. Previous to the transfer to plaintiffs the premises had been leased by defendants for a term of years commencing on March 1, 1926, to a tenant, who agreed to pay a monthly rental of $502.50. The court found that plaintiffs in April, 1926, through the lessee mentioned, entered into possession of the premises. In June, 1926, plaintiffs served upon defendants a notice of rescission, claiming that the condition of the building had been misrepresented, that the same contained certain latent defects of which they were unaware at the time of the purchase and which defendants concealed.

The complaint alleged as a first cause of action that during the negotiations defendants falsely and fraudulently represented ''(a) that the laminated girder in the basement of the building, which was partially exposed to view during the negotiations, was constructed of six planks each 2″x14″ of 10′ span spiked together, four of said six planks resting on 8″x8″ posts supported on concrete piers, and (b) that the first floor joists extended from the side walls across the girder mentioned and rested thereon . . . ''; that in fact the girder was constructed ''of only four planks of the above dimensions and two 2″x4″ nailing pieces or ledgers spiked to the planks and running parallel therewith'', and the first floor joists did not cross the girder or rest thereon.

Plaintiffs' second cause of action was based upon latent defects in the construction of the building which were alleged to have been concealed. These were the two instances of defective construction averred in the first cause of action, it being further alleged ''(3) The first floor joists in said building are each 2″x10″ in dimension and are spaced 16″ on centers, and the size and spacing of the said joists are such that the transverse extreme fiber stress in the said

joists is in excess of 1600 lbs per square inch,'' and ''(4) That the size and span of the laminated girder in said building is such that the transverse extreme fiber stress in said girder is in excess of 1600 lbs per square inch, and such that the compression across grain in said girder is in excess of 300# per square inch.''

The material allegations of the complaint were denied, and the court found that the defendant Sheftel for a long time prior to the negotiations mentioned had been to plaintiffs' knowledge a builder of apartment houses, and that during the negotiations he represented himself to be an expert builder of such houses, with years of experience and success as such, but that it was not true that he represented that the girder and joists mentioned in the first cause of action were constructed in the manner alleged by plaintiffs; and further that no false or fraudulent representations of any character were made; that it is not true that plaintiffs were induced by the alleged representations to purchase or that they relied thereon. It was also found that the conditions described in the first and second cause of action existed when the negotiations commenced and are unchanged, and that in this connection the following conditions exist, namely, ''(a) That there is an excess transverse extreme fiber stress in the said girder ranging from 20 to 30%, and that there would be no such excess if the girder was 12''x14'' instead of 8''x14'' in dimensions;

''(b) That considering the building load the method of relating the said joists to the said girder is not satisfactory construction;

''(c) That the compression across the grain in said girder ranges from 68% to 82% in excess of the limit, which is 300# per square inch;

''(d) That in order to protect against that excessive compression, across grain in the girder the 8''x8'' supporting post should be capped, or that there should have been hardwood bolsters between the top of the post and the girder;

''(e) That the transverse extreme fiber stress in the first floor joists allowed by the building law is 1600# per square inch, and that the limit has been exceeded from 40% to 47%;

''(f) That the transverse extreme fiber stress in the said first floor joists would not have been exceeded if defendants

had used 2″x12″ joists spaced 16″ center instead of 2″x10″ joists spaced 16″ center;

"(g) That the plans of said building called for first floor joists 2″x12″ in dimensions spaced 16″ on center, not for the 2″x10″ joists which were used, and for joists that rest upon the girder and not upon 2″x4″ ledgers;

"(h) That the transverse excess fiber stress in the first floor joists is in excess of the legal limit from 40% to 47% by reason of the span from the side wall to the girder being 14′ instead of 12′;

"(i) That defendant should have used bolsters or joist hangers and also extra joists."

Further, that while plaintiffs prior to the purchase had full opportunity and did inspect the building frequently it was then complete, and they were unable to discover the conditions described in the findings last quoted, or the third or fourth instances of defective construction set forth in their second cause of action without tearing out portions of the building, and that the same were then unknown to them and could not have been discovered by the exercise of ordinary diligence, but that they should and might by the exercise of ordinary diligence have known of the existence of the conditions described in their first cause of action; that defendants did not fraudulently conceal any of said conditions or prevent the detection thereof by plaintiffs, and that the defects described can be corrected at a cost of $500, which amount will fully compensate for any damage suffered by plaintiffs.

The court concluded from its findings that plaintiffs were not entitled to rescind, but should recover the amount found to be sufficient to correct the defects, and entered judgment accordingly.

Plaintiffs, who have appealed, admit that the testimony relating to the alleged fraud is conflicting and would require an affirmance of the findings on that issue; but they contend that they contracted for a well-constructed building and that there was an implied warranty that such was its condition; that the defects found constituted a substantial failure of consideration, and that consequently it was error to deny rescission; also that the finding that the imperfections can be remedied for $500 is unsupported and erroneous because the cost was not in issue, and that the findings that

defendants had no knowledge of all the defects and that there was no concealment of any of them are likewise without support; further, that the omission to find the purchase price of the building was erroneous, and that the defense of substantial performance was not available to defendants.

The structure was not built for plaintiffs, nor was it alleged or found that plaintiffs stipulated for a well-constructed building, and while there was some testimony by plaintiffs and their witnesses of such a representation by Sheftel the latter testified in effect that the extent of his representation in this respect was his remark to plaintiffs that he prided himself that he put up good buildings, that they withstood the earthquake well, and that he always employed good mechanics and contractors and accepted no low bids. There was other testimony tending to corroborate the truth of Sheftel's admitted statements.

The credibility of the witnesses was a question for the trial court, and there was no evidence which would compel a finding that any other representations were made.

In this connection it was shown that certain of the defects mentioned were violative of the State Housing Law and the building ordinance of the city of San Francisco; and in view of the rule that ignorance of the law excuses no one—sometimes stated as a presumption that all persons know the law—and the presumption that the law has been obeyed (Code Civ. Proc., sec. 1963, subd. 33), it is contended that it must be presumed that plaintiffs had knowledge of the statute and ordinance mentioned, and assumed that their provisions had been observed.

While it is commonly said that existing laws form part of a contract and that it is to be so interpreted (Civ. Code, sec. 1646), the proposition that everyone is presumed to know the law rests upon no basis of fact (10 Cal. Jur., Evidence, sec. 72, p. 760; 10 R. C. L., Evidence, sec. 17, p. 874; Chamberlayne, Law of Evidence, sec. 1170), but it is a rule of substantive law or of administration which has been found convenient or necessary to apply in the trial of cases; and it has been held not to be available for the purpose of supplying evidence of a fact material to the controversy nor to prevail against the real truth as to any particular situation except as regards punishment for a

criminal offense or responsibility for actual damage for the violation of private rights (22 Cor. Jur., Evidence, secs. 73, 85, pp. 143, 151). Consequently, where it is necessary to establish the fact of actual knowledge affirmative proof to that effect must be introduced, and no assistance in so doing can be derived from the pseudo presumption itself (Chamberlayne, Law of Evidence, sec. 1170; *Vogel* v. *Brown,* 201 Mass. 261 [87 N. E. 686]; *Blackworth* v. *Ward,* 27 Mich. 191 [15 Am. Rep. 162]; *Topolewski* v. *Plankington Packing Co.,* 143 Wis. 52 [126 N. W. 554]; *Caffey* v. *Tindall,* 99 Miss. 851 [56 South. 177]; *State* v. *Cutter,* 36 N. J. L. 125; *Hicks* v. *Stillwater County,* 84 Mont. 38 [274 Pac. 296]).

In this instance—as was true of the claim that plaintiffs stipulated for a well-constructed building—there was no allegation or testimony that they knew of the statute or ordinance; and in view of the authorities last cited there was no evidence that they were induced to contract by the belief that the provisions thereof had been complied with.

It is further claimed that there was an implied warranty of good construction. In support of this plaintiffs rely upon the provisions of the Civil Code, which, before the adoption of the Uniform Sales Act in 1931, provided that ''one who sells or agrees to sell an article of his own manufacture thereby warrants it to be free from any latent defects not disclosed to the buyer arising from the process of manufacture, and also that neither he nor his agent in such manufacture has knowingly used improper materials therein'' (Civ. Code, sec. 1769); and to certain cases involving the sale of personal property manufactured by the seller, or work by subcontractors upon structures in course of erection, where the articles to be constructed were designed for a particular purpose, and the subcontractor by his occupation held himself out as competent to make articles adapted to that purpose. The provisions of the section quoted clearly refer to sales of personal property and not to improved real property (Williston, Contracts, sec. 926); and the purchaser, in the absence of misrepresentation or fraud, takes the risk of quality (Warvelle, Vendors, sec. 907).

The trial court did not expressly find that the defects were not material; and it is urged that the only reasonable conclusion from the facts found taken together with the

testimony is that the defects pervaded the entire structure and constituted a substantial failure of consideration.

According to the testimony of several experts called by defendants all the defects found by the court could be corrected at a cost of not exceeding $500, and there appears to be no conflict in the testimony on this question. Plaintiffs urge that in determining whether the defects found are material the test to apply is the same as that by which it is ascertained whether a contract has been substantially performed.

■ With this we agree; and as held in effect in the following cases, where the defect is not such a failure to perform as renders the performance of the rest of the contract a thing different in substance from what was contracted for, and the loss occasioned is capable of compensation in damages, there is a substantial performance (*Connell* v. *Higgins*, 170 Cal. 541 [150 Pac. 769]; *Walker* v. *Harbor Business Blocks Co.*, 181 Cal. 773 [186 Pac. 356]; *Thomas Haverty Co.* v. *Jones*, 185 Cal. 285 [197 Pac. 105]). The defects must not be so essential as to substantially defeat the object which the parties intended to accomplish; and whether defects or omissions are substantial is generally a question of fact (2 Elliot on Contracts, sec. 1607; *Connell* v. *Higgins, supra*). ■ It is a fair conclusion from the testimony that the defects did not materially impair the benefits received by plaintiffs; and under the decisions referred to and those hereinafter cited the remedy was damages and not rescission (*Fountain* v. *Semi-Tropic L. & W. Co.*, 99 Cal. 677 [34 Pac. 497]; *Giberson* v. *Fink*, 28 Cal. App. 25 [161 Pac. 371]; *J. Musto etc. Co.* v. *Pacific States Corp.*, 48 Cal. App. 452 [192 Pac. 138]; *Gale* v. *Dixon*, 91 Cal. App. 529 [267 Pac. 342]).

Moreover, under section 4¾ of article VI of the Constitution and section 956a of the Code of Civil Procedure, in the disposition of appeals, in cases in which a jury trial is not a matter of right, or if so has been waived, this court is empowered to make findings upon the evidence in addition to those made by the trial court (*Kirk* v. *Culley*, 202 Cal. 501 [261 Pac. 994]); and in view of the evidence we accordingly find that the defects complained of were not material.

We are also of the opinion that the selling price of the property was not material in view of the other findings made and the omission to find thereon was not error.

As to plaintiffs' objection to the finding that the defects could be remedied for $500 on the ground that the same is not supported and that the cost was not in issue, there was ample testimony by expert builders to support the finding, and we are satisfied that the sum allowed will adequately compensate plaintiffs for any damage suffered by them.

Furthermore, it appears from plaintiffs' complaint that in addition to rescission and the recovery of the amount paid there was a prayer for "such other or further relief as may be meet", and the answer averred as a special defense that the alleged defects were inconsequential and could be remedied by the expenditure of sums not exceeding $425. These pleadings raised an issue on this question and justified the finding complained of.

Plaintiffs claim that having elected to rescind they were precluded from seeking damages in the same action, and that therefore they offered no evidence of the cost of remedying the defects; but, as held in the following cases, there is nothing inconsistent in asking for rescission, and damages if rescission be denied (*Montgomery* v. *McLaury*, 143 Cal. 83, 88 [76 Pac. 964]; *Bancroft* v. *Woodward*, 183 Cal. 99, 102 [190 Pac. 445]). Moreover, it is no objection that the complaint in an action for rescission nowhere asks for relief by way of damages. Where equity has acquired jurisdiction for one purpose it will retain it to the final adjustment of all differences between the parties arising from the cause of action presented, it being the duty of a court of equity where all the parties to a controversy are before it to adjust the rights of all and leave nothing for further litigation (*Swan* v. *Talbot*, 152 Cal. 142 [17 L. R. A. (N. S.) 1066, 94 Pac. 238]). There was full opportunity for plaintiffs to prove that defendants' witnesses were mistaken in their estimates, but no attempt was made to do so, and no valid excuse for the omission has been shown.

The court also found that Sheftel did not know that the first floor joists were 2 inches by 10 inches in dimensions, or know of the excess strain thereon and in the girder, or of the excess in the compression across the grain in the

542

girder, and also that defendants did not fraudulently conceal from plaintiffs any of the conditions found or prevent the detection thereof by the latter. These findings so far as material were sufficiently supported, and the record discloses no evidence which would compel findings to the contrary.

Lastly, it is urged that the defense of substantial performance is founded in equity; and that Sheftel, having permitted the defects in question to be created, does not come within the rule permitting such a defense.

As stated, the structure was not erected pursuant to a contract with plaintiffs, and was practically complete before the purchase was made. This, together with the findings that there was no misrepresentation and no fraudulent concealment, was sufficient to support the conclusion that there was no wilful or intentional violation of any duty owing to plaintiffs.

After an examination of the entire record, including the evidence, we are of the opinion that the findings are fully supported and that nothing has been shown which would warrant a reversal.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 9, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 9, 1932.