## FILES, AUDITOR, v. STATE EX REL. P. & H. RY. CO.

1. **TAXES:** *Redemption by railroads under overdue tax-law.*
   The act of 1869, providing that railroad companies, to whom lands that had been forfeited to the state for taxes should be donated or sub-scribed by the former owners to aid in the construction of their roads, might redeem them from the state without payment of the taxes and cost due on them, applies to lands forfeited under the gen-eneral revenue laws, and not to those sold under the overdue-tax law of 1881. The latter cannot be redeemed except upon payment of the amount due the state and the cost of the judicial proceedings.

34–48

2. SAME:  *Grant of.*
A grant to a person to take the benefit of past due taxes to his own use, like the right of exemption from future taxation, is to be strictly construed, and the right is not taken by implication in one case more than in the other.

APPEAL from *Pulaski* Circuit Court.
Hon. F. T. VAUGHAN, Judge.

*Dan W. Jones,* Attorney-General, for appellant.

The right to redeem without actual payment of the amount due, as provided by the act of 1869, was intended to be limited to cases of forfeiture under the general revenue law, and does not apply to lands purchased by the state at judicial sale under the overdue-tax law of 1881. *Secs. 5489-90, Mansf. Dig.; Rev. Act 1868, pp. 275-6; ib., 277, 278; Acts 1881, p. 63.*

*U. M. & G. B. Rose,* for appellee.

By Act 1881, p. 69, section 11, the owner had a right to redeem at any time within two years after the sale or decree. And any one having the right to redeem has the right to donate them in aid of any railroad, and the certificate of the remission of taxes is thereupon to issue. *Secs. 5489-90, Mansf. Dig.*

COCKRILL, J.   The appellee presented a petition for a mandamus to the Pulaski circuit court to compel the auditor to issue it a certificate of redemption of lands from sale for non-payment of taxes, in pursuance of the act of April 8, 1869.

The petition described many tracts of land which, it was alleged, had previously belonged to one Baber; and it was

alleged that while Baber was the owner of the lands they had been forfeited to the state at different times for the non-payment of taxes, the greater part of them for the taxes of the year 1868; that subsequently proceedings were taken against the lands under the overdue-tax law of 1881; that they were condemned by decree of court for the payment of the taxes and the penalties due and the costs of the judicial proceedings, and that upon a sale had thereunder they were stricken·off to the state; that after the sale, and before the time for redemption granted in such cases by the act of 1881 had expired, Baber donated the lands to the relator, the railway company, to aid in the construction of its road; that while the period of redemption was still unexpired it had demanded the certificate of redemption from the auditor, and that he had refused to grant it.

The auditor demurred to the petition. His demurrer was overruled; he refused to plead further; the court granted the relief prayed, and he appealed.

The act of 1869, under which the right of redemption is claimed, with the preamble, is as follows:

1. TAXES: Redemption by railroads under overdue tax law.

"Whereas, The title to large quantities of lands heretofore sold to the state for taxes, and yet unredeemed, remains in doubt, whereby the improvement of the same is prevented and the state is receiving no revenue therefrom; therefore,

"Section 1. Be it enacted, etc., That whenever any person having title to or being the owner of any lands which have been or may be stricken off to the state, or forfeited for non-payment of taxes, shall donate or subscribe the same in aid of the construction of some railroad, and the same shall be reported to the auditor of state, as provided in section 2 hereof, the auditor shall grant his certificate, as in case of redemption, and thereupon all taxes or claim of the state on account of non-payment of

taxes on each tract of land so subscribed or donated shall be remitted and discharged; provided, that a lien shall exist in favor of the state for the taxes hereby remitted, which may be enforced and said taxes collected according to law, if such railroad shall not be completed through the county in which or nearest to which such lands are selected within five years from the date of such subscription or donation." See *Mansf. Dig.*, secs. *5489, 5490.*

The other sections prescribe the duty of the railroad company as to delivering lists of the lands to the auditor, and provide that " they shall not be listed nor subject to taxation until conveyed to actual purchasers " by the company.

The latter provision is so manifestly in contravention of section 6, article 16, of the present constitution, which declares void all laws exempting property from taxation except as provided in the same instrument, that it has been omitted from the last revision of the statutes, as it was from the revision had under the constitution of 1868, which required the listing of all property for taxation, except certain specific classes. *Fletcher v. Oliver, 25 Ark., 289.*

Whether the release or remission of taxes already due is an exemption from taxation for the years remitted so as to render the first section of the act obnoxious to the same constitutional provisions, is a question not argued by counsel, and the consideration of it is not necessary to the final decision of this cause in the light we view the act. The ostensible object of the act of 1869, however variant from that intent the practice under it may have been, was to " aid in internal improvements," as its title imports. This was to be effected in two ways, viz.: (1) Railroads were to be succored; and (2) lands to which the state's right of ownership was doubtful, and which would for that reason be unsaleable and therefore unproductive of revenue or

other benefit to the state, were to be placed in the line of development. These results were to be accomplished by the co-operation of the state and the owner of the land, but only in cases where the land had been or might thereafter be "stricken off to the state, or forfeited for non-payment of taxes," as the act declares. The terms "stricken off" and "forfeited to the state" for non-payment of taxes are of frequent use in the revenue acts, and are commonly of equivalent meaning there. As used in the act of 1869, they evidently refer to sales made under the revenue law for non-payment of taxes. It was this class of titles that were looked upon with suspicion, owing to the informalities commonly attending the assessment or levy of taxes, or other duties of officers connected with the collection of the revenue; and there was no other law providing for striking off or forfeiting lands to the state for non-payment of taxes.

Now, the act of 1881 is entitled "an act to enforce the *payment* of overdue taxes." Its provisions show that its object was the collection, and not the donation, of the revenue. It recognized, as did the act of 1869, the instability of titles based upon forfeitures for the non-payment of taxes, and the consequent improbability that the lands would be of any practical benefit to the commonwealth while the title rested upon the claim derived through the machinery of the general revenue laws. But the remedy for the correction of the evil adopted in this act is altogether different from that of 1869. Instead of the heroic remedy of joining the owner in a release of all rights to third parties, in order to subject the lands to taxation for the future, it proposed to institute judicial proceedings against the lands, the result of which would be to force the payment of the taxes due, or else quiet the state's title, and thus enable her to put the lands upon the market. As a

matter of grace to the owner, a new period of redemption was fixed. The legal right to redeem lands forfeited more than two years before the passage of the act of 1881 existed by virtue of that act alone. But the privilege of reclaiming the lands was burdened by the act with a condition, and could, therefore, be exercised only upon strict compliance with the condition—that is, that the amount due to the state, together with the costs of the judicial proceedings, should be paid. The privilege of redeeming upon any other terms is nowhere granted. It is reasonable, however, to presume that the statute mentions in express terms all the favors it was intended to grant. The collection of the revenue is essential to the preservation of government, and the state's right to receive it is not to be cut off or affected, unless the intention to do so is plainly expressed. A grant to a person to take the benefit of past due taxes to his own use, like the right of exemption from future taxation, is to be strictly construed, and the right is not taken by implication in one case more than the other.

2. SAME: Grant of.

We conclude, then, that the right to redeem without actual payment of the amount due, as provided by the act of 1869, was intended to be limited to cases of forfeiture under the general revenue law, and does not apply to lands purchased by the state at judicial sale under the overdue-tax law of 1881. The relator was not, therefore, entitled to the relief asked.

The demurrer to the petition should have been sustained. The judgment must be reversed and the cause remanded, with instructions to sustain the demurrer.

It is so ordered.