[L. A. No. 3499.   Department One.—July 15, 1915.]

JOHN F. CONNELL, Respondent, v. THOMAS HIGGINS, Appellant.

JUDGMENT—REDUCTION OF—ACCEPTANCE OF ORDER FOR—APPEAL.—An order reducing the amount of a judgment, in pursuance of the acceptance by the plaintiff of a conditional order denying a new trial, is not an entry of a new judgment.   It does not destroy an appeal from the judgment already entered, nor make it necessary

to take a new appeal from the judgment as so reduced, after the order reducing it is entered.

ID.—MOTION FOR NEW TRIAL—STATEMENT ON—EXTENSION OF TIME TO PROPOSE—POWER OF COURT—LEGAL HOLIDAY.—An extension of time by stipulation of the parties to propose a statement on motion for a new trial to a legal holiday, operates to extend the time to and including the next day; and an order of the court made on the latter day extending the time further for thirty days is within time, and is effective to extend the time to the latter date.

ID.—EXTENSION OF TIME—RULE OF COURT.—A rule of the superior court providing, in substance, that where time has been extended by stipulation, the court cannot order a further extension beyond the period of thirty days, inclusive of the time given by the stipulation, does not deprive the court of power to grant an extension where there has been a previous extension by stipulation covering the period of thirty days. The superior court, by section 1054 of the Code of Civil Procedure, is given power to extend the time for proposing a statement for the period of thirty days, and it cannot by its own rule divest itself thereof; and in the absence of any showing to the contrary it will also be presumed on appeal, that the court disregarded its rule, for sufficient cause and to subserve the ends of justice, as it has power to do.

ID.—APPEAL—RECORD ON—PLEADINGS.—Where a case was tried upon a third amended complaint, the previous pleadings need not be included in the transcript on appeal, unless they are necessary to present the question of the statute of limitations or of a departure from the original cause of action.

ID.—DEFECT GOING TO MERITS—DEFECTIVE TRANSCRIPT.—A defect which goes only to the merits will not be considered on a preliminary objection that the court cannot consider the appeal at all because of a defective transcript.

ID.—BUILDING CONTRACTS—BREACH OF—REMEDIES OF CONTRACTOR.— In controversies with regard to the performance of building contracts, the remedies of the contractor vary according to the circumstances of the case. If the owner has unjustifiably broken the contract and thereby prevented the contractor from performing the same, the contractor who has been and is ready and willing to perform, may sue to recover the damages sustained from the breach by the owner, and the damages in such a case would consist of the profits he would have made if he had been permitted to complete the work according to the contract. This would not be the entire contract price, but the difference between the unpaid part of the contract price and the reasonable cost of completing that part of the work which he was not allowed to perform. If at the time the owner interferes the work is substantially completed, so that the portion lacking would come within the maxim *de minimis non curat lex*, and the owner refuses to accept the same or to allow further per-

formance, the contractor may treat the contract as performed, the refusal to accept will be considered as unjustifiable and the contractor may recover the entire balance unpaid on the contract price. If the owner's conduct constituted a breach of the contract, the contractor would have the further remedy of treating the contract as rescinded and suing upon the *quantum meruit* for the value of the work performed.

ID.—PLEADING—CONSTRUCTION OF COMPLAINT.—In an action by the contractor, where there is no allegation in the complaint concerning the termination of the contract by the owner before completion, or the cost of performing the part of the work remaining uncompleted at the time the owner took possession, but the demand is for the entire contract price, the complaint does not present a case of the owner unjustifiably preventing the contractor from completely performing the contract; nor is the complaint sufficient as a suit upon the *quantum meruit* to recover the value of the work done and materials furnished, where there is no allegation concerning the reasonable value thereof. Such a complaint can only be considered as an action to recover the balance of the contract price upon the theory that the work contracted for had been substantially performed.

ID.—PLEADING—EXTRA WORK.—In such a case where the complaint avers that the contractor did extra work at the request of the owner, the reasonable value of which was a certain amount, for which judgment is asked, and the contract provided that this might be done, this part of the complaint is to be regarded as a suit upon the contract for the cost of the additional work.

ID.—MISJOINDER OF CAUSES—JOINDER OF CAUSES OF ACTION ON CONTRACT AND IN TORT.—Where the contractor further complained that because of delays ensuing by reason of the conduct of the owner and others doing work upon the building under him, he was hindered in the performance of the work, was required to move materials from place to place, and otherwise damaged in a certain sum; and also that the owner had taken possession of his tools and appliances to his further damage in a certain sum, which causes of action were commingled with the cause of action for the contract price and the extras, there is an improper joinder of causes of action in that there is a joinder of a cause of action upon the contract with the cause of action for conversion of plaintiff's tools and appliances, which is a cause of action in tort.

ID.—CERTIFICATE OF ARCHITECT—DELINQUENCY OF CONTRACTOR—INSTRUCTIONS.—Where a building contract authorizes the architect, as arbiter, to determine and certify that the contractor has failed or refused to supply a sufficiency of workmen, or material, or to do the work with diligence, or that the work done was unsound, when such fact or facts are material, his certificate of such fact is conclusive upon the parties, and can be impeached only by showing fraud, or gross mistake amounting to fraud. An instruction that the jury is at

liberty to disregard the certificate if they found merely that it was *incorrect,* is erroneous.

Id.—Duty of Court to Instruct Jury—When Error Not Cured.—The court should, at least, have instructed the jury that the certificate was conclusive unless they found from the evidence that it was given fraudulently; and the error in the instruction given was not cured by a prior instruction that the architect and engineer had been made "the judges as to whether or not the plant was completed according to the contract (and that) in the absence of fraud their certificate to that effect is conclusive," as this instruction is inconsistent with the other, and it is impossible to say which direction the jury followed, or, that they understood either instruction, especially where this instruction was upon a different subject.

Id.—Certificate of Architect—Reference to Letter Enumerating Defects and Lack of Performance.—The certificate of the architect and engineer was/not vitiated by reason of a reference therein to a prior letter from them to the contractor which contained a schedule of the items of defects and lack of performance in the work, the reference being solely for that purpose, and it being written and signed as a demand upon the contractor that he immediately remove the defects and make the work conform to the contract, which demand had no relation to the certificate to which the letter was attached and the letter not being referred to for the purpose of incorporating therein a demand for the resumption of the work.

Id.—Pleading—Joinder of Causes.—Where the contract provided that the owner might, at any time, require alterations in the contract without avoiding the same, but that he should, in that event, reimburse the contractor for all damages necessarily caused to him thereby, so far as the cause of action stated in the complaint to recover a certain sum as damages is based on the damages arising from changes made by the owner in the plans for the work, or for other breaches by the owner of the expressed or implied obligations imposed on him by the contract, there was no misjoinder of causes of action and such damages would be a cause of action arising upon a contract.

Id.—Completion of Contract by Owner—Right of Recovery for—Instructions.—Where the contract provided that, in the event of the termination of the contract the owner would be entitled to expenses incurred by him in finishing the work, as a deduction from any balance due upon the contract price, and that this expense should be audited and certified by the architect and engineer, whose certificate thereto was to be conclusive upon the parties, the court should have instructed the jury that the defendant was entitled to the reasonable expense incurred in completing the contract, instead of limiting the damages recoverable by him for the expense of completing the work to the "reasonable value" of the work and materials, as the

reasonable value of the work and materials required would not necessarily be the same as the reasonable expense of completion, and the actual reasonable expenditures would be the measure of the owner's right.

ID.—EVIDENCE—REASONABLE EXPENSE OF COMPLETING BUILDING—CERTIFICATE OF ARCHITECT—ADMISSIBILITY OF.—The certificate of the architect and engineer as to the amount of the reasonable expenses of completing the building was admissible in evidence and it was error to exclude it. If the plaintiff desired to impeach it for fraud or mistake, he was at liberty to do so, but his desire to do so, or the previous introduction by him of evidence on the subject, would not be good ground for refusing to admit it in evidence, and the sufficiency of proof of fraud or mistake, if any were given, would be a question for the jury.

ID.—SUBSTANTIAL PERFORMANCE OF CONTRACT—DEFINITION OF.—The definition of "substantial performance" of the contract in such a case is difficult to give in general terms. It is usually a question to be determined in each case with reference to the existing facts and circumstances.

ID.—SUBSTANTIAL PERFORMANCE OF CONTRACT—MEANING OF.—Substantial performance means that there has been no willful departure from the terms of the contract, and no omission of any of its essential parts, and that the contractor has in good faith performed all of its substantive terms. If an omission is so slight that it cannot be regarded as an integral or substantive part of the original contract, and the other party can be compensated therefor by a recoupment for damages, the contractor does not lose his right of action. A substantial performance must be established, in order to entitle the party claiming the benefit of the contract to recover; but this does not mean a literal compliance as to details that are unimportant.

ID.— FAILURE TO INSTRUCT AS TO SUBSTANTIAL PERFORMANCE—ABSENCE OF REQUEST.—In such a case it cannot be said to be error to fail to give an instruction on the subject of substantial performance, in the absence of a request therefor, although it is doubtful if there was a substantial performance and such an instruction would be eminently proper.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Stanley A. Smith, Judge presiding.

The facts are stated in the opinion of the court.

J. Wiseman Macdonald, for Appellant.

R. L. Horton, for Respondent.

SHAW, J.—The defendant appeals from the judgment and from an order denying his motion for a new trial.

1. The preliminary objections of the respondent to the consideration of the appeal from the judgment and of the statement on motion for new trial are not well taken.

The order made reducing the amount of the judgment, in pursuance of the acceptance by the plaintiff of the conditional order denying a new trial, was not the entry of a new judgment. It did not destroy the appeal from the judgment already entered, nor make it necessary to take a new appeal from the judgment as so reduced, after the order reducing it was entered. It was a mere reduction of the judgment previously entered and left the appeal therefrom in full force, except that the damages were reduced by one thousand dollars.

February 12, 1912, was a legal holiday. Consequently, the stipulation of the parties extending to that day the time to propose the statement on motion for new trial, operated, under the law, to extend the time to and including February 13, 1912. Therefore, the order of the court, made on February 13, 1912, extending the time further until March 13, was within time and was effective to extend the time to the latter date. The rule of the superior court of Los Angeles County, then in force, providing, in substance, that where time had been extended by stipulation the court could not order a further extension beyond the period of thirty days, inclusive of the time given by the stipulation, did not deprive the superior court of power to grant an extension of time where there had been a previous extension by stipulation covering the period of thirty days. The superior court, by section 1054 of the Code of Civil Procedure, is given power to extend the time for proposing a statement for a period of thirty days. This power it has and it cannot by its own rule divest itself thereof. Furthermore, in the absence of any showing to the contrary, this court would presume that the superior court disregarded the rule for sufficient cause and to subserve the ends of justice. This it has the power to do. (*Sullivan* v. *Wallace*, 73 Cal. 307, [14 Pac. 789]; *Pickett* v. *Wallace*, 54 Cal. 147; *People* v. *Williams*, 32 Cal. 287.) There is nothing to show that it was not done for this reason. The presumption is that sufficient cause existed.

The case was tried upon a third amended complaint. In such a case the previous pleadings need not be included in the transcript on appeal, unless they are necessary to present the question of the statute of limitations or the question of a departure from the original cause of action. Neither of these questions is presented upon these appeals. It was, therefore, unnecessary to insert the original complaint in the transcript. The objection that the statement is unintelligible because the plans and specifications of the contract which the plaintiff was required to perform are not set forth in full, goes to the merits of the case and need not be considered here. It is for the appellant to present sufficient of the evidence and proceedings below to enable the court, on appeal, to decide the questions presented upon their merits. If he has not done this, the rulings of the court below cannot be disturbed. We proceed to consider the appeal on its merits.

2. On February 12, 1910, Connell and Higgins executed a contract in writing whereby Connell agreed to make and install a power plant in a building in Los Angeles, then in process of erection by Higgins. The contract price was $28,530, payable in three installments, one of $7,132.50, payable during the process of erection, a like amount payable at completion and acceptance, and a third of $14,265 payable thirty days thereafter. The first payment has been made, the others remain unpaid. Connell was to have the plant completed on or before July 1, 1910, and he was to have it so far completed as to be ready to furnish power to operate elevators in the building by May 1, 1910, or, if unable to do so by that time, he was to provide a temporary plant for that purpose. He was not to be responsible for delays in the work caused by labor strikes or by the conduct of other contractors or persons performing work on said building. To facilitate the work, Higgins agreed that on March 1, 1910, he would give Connell possession of the engine room and sufficient space on the first floor of the building to handle and install machinery. The contract further provided that the work should be done according to the plans and specifications and to the satisfaction of "A. L. Haley, Architect, Inc.," and one Martin, an engineer. There was also a provision in the form usual in such contracts declaring that if Connell neglected to supply sufficient workmen and materials, or to prosecute the work with diligence, and such failure was sufficient

in the opinion of said architect and engineer to justify it, then, upon their certificate to that effect, and upon notice thereof to Connell, Higgins should have the right to terminate the contract, take possession of the premises, and complete the work himself, and that the expense of such completion by him should be deducted from any balance remaining unpaid upon the contract price. This clause of the contract was numbered IX therein and it is identical in terms with that of paragraph 16 of the contract set forth in the opinion in *American-Hawaiian etc. Co.* v. *Butler*, 165 Cal. 504, [133 Pac. 280]. Connell was delayed in the beginning of his work by the failure of Higgins to have the engine room and space on the first floor ready. Other delays occurred by reason of labor strikes and from interference by other contractors and persons working upon the other portions of the building. Disputes arose from time to time between the parties concerning these delays and concerning the manner of performance by Connell of the work contracted for. On December 21, 1910, Connell gave notice to Higgins that he claimed that the work was complete and demanded its acceptance. Thereupon, on December 31, 1910, the architect and engineer named in the contract sent to Connell a letter stating that the power plant was not yet complete, that it had not been installed in a good or substantial manner, or according to the contract, and including a list of the defects and matters in which the plant was unsound and not in conformity with the contract, and demanding that he immediately proceed to complete the same in accordance with the statements made. On January 6, 1911, the architect and engineer made their certificate in pursuance of paragraph IX of said contract, declaring that Connell has refused and neglected to supply skilled workmen and proper materials for the work or to pursue it with diligence, that the plant was still unsound and improper and failed to conform to the contract, and that the said refusal of Connell to make the plant conform to the contract was sufficient ground to justify Higgins in terminating the contract, taking possession of the premises and the tools therein in use by Connell and, thereupon, proceeding to finish the work himself. On the same day Higgins served upon Connell a notice terminating the contract, in pursuance of said certificate, and stating that three days thereafter he would take possession of the building,

tools, and appliances and proceed to complete the work to make it conform to the contract. On January 12, 1911, in pursuance of said notice, Higgins did take possession of the premises and the said tools, and has ever since held the same and thereby prevented Connell from proceeding further with the work. Connell claims that the conduct of Higgins in so taking possesssion of the plant was unjustified, that the said plant was, at that time, substantially completed in conformity with the contract and that he is now entitled to full payment of the balance of the contract price. Higgins claims that his conduct was entirely justifiable and authorized by the contract; that he expended upon the plant, in order to make it comply with the contract, the sum of $8,594.02, and that he has the right to deduct this amount from the unpaid balance of the contract price. The foregoing transactions and claims form the basis of the main controversy in the case.

In controversies of this character with regard to the performance of building contracts, the remedies of the contractor vary according to the circumstances of the case. If the owner has, as is here contended, unjustifiably broken the contract and thereby prevented the contractor from performing the same, the contractor who has been and is ready and willing to perform, may sue to recover the damages sustained from the breach by the owner. The damages in such a case would consist of the profits he would have made if he had been permitted to complete the work according to the contract. This would not be the entire contract price, but the difference between the unpaid part of the contract price and the reasonable cost of completing that part of the work which he was not allowed to perform. (*Hale* v. *Trout,* 35 Cal. 243; *McConnell* v. *Corona etc. Co.,* 149 Cal. 65, [8 L. R. A. (N. S.) 1171, 85 Pac. 929] ; *Winans* v. *Sierra L. Co.,* 66 Cal. 67, [4 Pac. 952] ; *Alderson* v. *Houston,* 154 Cal. 10, [96 Pac. 884].) If at the time the owner interferes the work is substantially complete, so that the portion lacking would come within the maxim *de minimis non curat lex,* and the owner refuses to accept the same or to allow further performance, the contractor may treat the contract as performed, the refusal to accept will be considered unjustifiable and the contractor may recover the entire balance unpaid of the contract price. (*Coplew* v. *Durand,* 153 Cal. 281, [16 L. R. A. (N. S.) 791, 95 Pac. 38] ; *Oullahan* v. *Baldwin,* 100 Cal. 653, [35 Pac.

310]; *Griffith* v. *Happersberger,* 86 Cal. 613, [25 Pac. 137, 487]; *Voorman* v. *Voight,* 46 Cal. 397; *Los Angeles etc. Co.* v. *Wilshire,* 135 Cal. 659, [67 Pac. 1086].) If the owner's conduct constituted a breach of the contract, the contractor would have the further remedy of treating the contract as rescinded and suing upon the *quantum meruit* for the value of the work performed. (*McConnell* v. *Corona etc. Co.,* 149 Cal. 65, [8 L. R. A. (N. S.) 1171, 85 Pac. 929].) Much of the argument in behalf of Connell appears to assume that he has sued upon the theory that Higgins has unjustifiably prevented him from completely performing the contract. A careful examination of the complaint, however, shows that this is not the case. There is no allegation concerning the termination of the contract by Higgins before completion, or the cost of performing the part of the work remaining uncompleted at the time Higgins took possession. The demand is for the entire contract price. Neither is the complaint sufficient as a suit upon the *quantum meruit* to recover the value of the work done and materials furnished. There is no allegation concerning the reasonable value thereof. The complaint can only be considered, in so far as this part of it is concerned, as an action to recover the balance of the contract price upon the theory that the work contracted for has been substantially performed. It is not altogether certain and definite on this point. It appears that some portions of the work were unperformed at the time Higgins took possession. It is alleged, however, that these were trivial in character, and for the purpose of our consideration of the case we will assume that the complaint, in this aspect, was intended to state a cause of action of this character, and that it is sufficient in its allegations of fact. Inasmuch as we have concluded that the cause must be remanded for new trial because of errors in instructions, we think it unnecessary to enter upon a discussion of this part of the complaint. The complaint also avers that Connell did extra work upon the plant at the request of Higgins, the reasonable value of which was four hundred and fifty dollars, for which he asks judgment. The contract provided that this might be done and this part of the complaint is to be regarded as a suit upon the contract for the cost of the additional work.

Connell further complains that because of delays ensuing by reason of the conduct of Higgins and others doing work

upon the building under him, he was hindered in the performance of the work, was required to move materials from place to place and otherwise damaged in the sum of five thousand dollars. He also claims that Higgins has taken possession of his tools and appliances to his further damage in the sum of one thousand dollars. The complaint sets forth these causes of action commingled with the cause of action for the contract price and the extras. They are all set forth in one count, but the objection that they are not separately stated is not made.

The objection that there is an improper joinder of a cause of action for conversion of plaintiff's tools and appliances, which is an action in tort, with the cause of action upon the contract, is well taken. There is an attempt to state the cause of action for conversion of the tools as a breach of contract. We think, however, it is essentially a wrong, constituting a foundation for an action in tort, and that the demurrer for misjoinder was well taken. We do not think that the defendant was seriously prejudiced thereby, and if this were the only error we should not feel warranted in reversing the judgment for this cause.

The answer denied the failure of the defendant to perform his part of the contract and the allegations of the complaint showing substantial performance by the plaintiff. It further alleged many particulars in which there was a substantial lack of performance. Defendant also filed a pleading called a cross-complaint, setting forth the provisions of paragraph IX of the contract and alleging proceedings under it whereby the architect and engineer certified that Connell was delinquent in the work and that such delinquency was sufficient to justify the termination of the contract, the giving of the notice of termination to Connell by Higgins, the taking possession by Higgins, and the completion of the work by him at the expense of $8,594.02, which he asks should be deducted from any balance due upon the contract price. He also alleged that Connell was guilty of certain breaches of the contract whereby Higgins was damaged in a large sum of money exceeding the contract price, and he asks judgment for the excess.

By instruction numbered 22, the court charged the jury that if they should find that the architect and engineer "*correctly* certified to the owner that the plaintiff had failed and

refused to supply a sufficiency of properly skilled workmen, or material of the proper quality, as provided in said contract, or to pursue the work with promptness or diligence and that the plant was unsound and improper," and that such refusal and neglect afforded sufficient ground for the termination of the contract, then the defendant was justified in terminating the same and taking possession of the premises and of the plaintiff's tools situated therein, for the purpose of completing the plant, and that, in that event, the defendant had a right to deduct from the unpaid portion of the contract price all expenses necessarily incured by him in the completion of the work to make it conform to the contract. There was a conflict of evidence on the question whether or not Connell had neglected to supply skilled workmen and proper materials, and had prosecuted the work diligently. There was also evidence tending to show that Higgins had expended a large sum of money in completing the work to make it conform to the contract.

This instruction was clearly erroneous. The question of the effect of such a certificate under the provisions of this contract was considered in *American-Hawaiian etc. Co.* v. *Butler,* 165 Cal. 504, [133 Pac. 280]. At page 513, [133 Pac. 286], the court says:

"It is well settled that where the parties to a building contract thereby authorize the architect, as arbiter, to determine and certify the existence of a fact when such fact becomes material to a proceeding under such contract, the certificate of the architect, duly made, that the fact exists, is conclusive upon the parties with respect to the thing to be done to which such fact relates, or as to which, under the proceeding, it is to affect the rights of the parties and that such certificate can be impeached as to such facts only for fraud, or for gross mistake amounting to fraud. (*Dingley* v. *Greene,* 54 Cal. 333; *Moore* v. *Kerr,* 65 Cal. 519 [4 Pac. 542]; *City Street Imp. Co.* v. *Marysville,* 155 Cal. 419, [23 L. R. A. (N. S.) 317, 101 Pac. 308].) There can be no doubt that if, in pursuance of said certificate, the owner had given a proper notice terminating the employment, the certificate, if not so impeached, would be conclusive evidence of the delinquency of the contractor, in the particulars therein stated, in any controversy growing out of such termination." (See, also, *Mahoney* v. *Oxword R. Co.,* 133 App. Div. 656, [118 N. Y.

Supp. 216]; *Lynn* v. *Baltimore etc. Co.,* 60 Md. 415, [45 Am. Rep. 741]; *Clarke* v. *Watson,* 18 C. B. (N. S.) 285, [144 Eng. Reprint, 452]; *Chicago etc. Co.* v. *Price,* 138 U. S. 185, [34 L. Ed. 917, 11 Sup. Ct. Rep. 290]; *Chism* v. *Schipper,* 51 N. J. L. 17, [14 Am. St. Rep. 668, 2 L. R. A. 544, 16 Atl. 316]; *Wendt* v. *Vogel,* 87 Wis. 462, [58 N. W. 764]; *Hot Springs etc. Co.* v. *Maher,* 48 Ark. 529, [3 S. W. 639].) In the case at bar the certificate and notice were in proper form. The certificate could not be impeached by merely showing that it was incorrect. The decision of the architect and engineer upon the question whether Connell had diligently prosecuted the work, had supplied the required material and workmen, and was doing the work in accordance with the contract, was a determination upon the evidence relating to these facts. They were entitled to consider all the evidence upon the subject then accessible to them, including an inspection of the plant. The jury, in determining the question as submitted to them by the instruction, had the same function to perform, but not necessarily on the same evidence. The instruction practically said to the jurors that if they believed from the evidence before them that the architect and engineer had not correctly decided the question, they were at liberty to disregard the certificate and to refuse to allow to Higgins the expense of completing the work to which he would have been entitled. Such, as we have seen, is not the law. The certificate is conclusive unless it is impeached by showing that it was made fraudulently or in bad faith, or under some mistake with regard to a material fact. As was said in *Wendt* v. *Vogel,* 87 Wis. 462, [58 N. W. 764]: "The mistake here referred to is not a mere error in judgment as to the quality of the work or the responsibility for defects therein, upon conflicting evidence, which may be overthrown by a preponderance of evidence before the jury, but it means unintentional misapprehension or ignorance of some material fact, and it must be clearly established by the evidence, and so gross and palpable that it is equivalent in its effect to dishonest, fraudulent, or merely arbitrary action." There was no evidence of any mistake of that kind and we need not consider that aspect of the case. The court below should, at least, have instructed the jury that the certificate was conclusive unless they found from the evidence that it was given fraudulently. The court did say in instruction 10 that the

architect and engineer had been made "the judges as to whether or not the plant was completed according to the contract (and that) in the absence of fraud their certificate to that effect is conclusive." This did not cure the error. Instruction 10, on this point, is inconsistent with instruction 22, and it is impossible to say which direction the jury followed, or, that they understood either instruction. Moreover, instruction 10 was upon a different subject. It stated, in effect, that if the power plant was not completed on January 12, 1911, when Higgins took possession, then Connell would not be entitled to any further payment upon the contract price until it was completed according to its terms, and, as above stated, that the certificate aforesaid was conclusive on the subject of such completion, in the absence of fraud. It did not relate to the right of Higgins to recoup his expenses in completing it. The jury would infer, from the two instructions, that Higgins could not recoup the expenses unless the evidence at the trial showed that the certificate was correct. This, as we have shown, is not the true rule. The error was obviously prejudicial and it makes a reversal necessary.

There is no merit in the plaintiff's claim that the certificate of the architect and engineer was vitiated by reason of the reference therein to a letter from them to Connell dated December 31, 1910. This letter contained a schedule of the items of defects and lack of performance in the work and it was referred to in the certificate solely for that purpose. It was written and sent as a demand upon Connell that he immediately remove the defects and make the work conform to the contract. This demand, however, had no relation to the certificate to which the letter was attached, and the letter was not referred to for the purpose of incorporating therein a demand for the resumption of the work within forty-eight hours. That letter was delivered on December 31, 1910, and this demand had long since served its purpose. The fact that this demand was a part of the paper containing the schedule thus attached to the certificate was wholly immaterial both to the notice of termination and to the certificate which accompanied it.

3. The contract provided that the owner might, at any time, require alterations in the contract without avoiding the same, but that he should, in that event, reimburse the contractor for all damages necessarily caused to him thereby. So far as the

cause of action stated in the complaint to recover five thousand dollars as damages is based on the damages arising from changes made by the owner in the plans for the work, or from other breaches by Higgins of the express or implied obligations imposed on him by the contract, there was no misjoinder of causes of action. Such damages would be a cause of action arising upon contract.

4. The defendant complains of instruction 24 because it limits the damages recoverable by him for the expenses of completing the work to the "reasonable value" of the work and materials. The language of the contract was that, in the event of the termination of the contract, under paragraph IX, the owner would be entitled to the expenses incurred by him in finishing the work, as a deduction from any balance due upon the contract price, and that this expense should be audited and certified by the architect and engineer, whose certificate thereto was to be conclusive upon the parties. Under this provision of the contract the court should have instructed the jury that the defendant was entitled to the reasonable expense incurred in completing the contract. The reasonable value of the work and materials required would not necessarily be the same as the reasonable expense of completion. Circumstances beyond his control might have compelled him to pay more than the reasonable value, or might have enabled him to procure the work and materials for less than such value. In such a case the actual reasonable expenditure would be the measure of his right. In this connection it may be further stated that the architect and engineer made a certificate as to the amount of this reasonable expense. This certificate was offered in evidence by the defendant and, upon objection by the plaintiff, it was excluded by the court. In this ruling the court erred. Under the terms of the contract as above stated and upon the authorities heretofore cited, it is plain that the making of this certificate was within scope of the authority given to the architect and engineer by the contract, and that, in the absence of fraud or mistake, their certificate was conclusive. It was, therefore, admissible in evidence. If the plaintiff desired to impeach it for fraud or mistake he was at liberty to do so, but his desire to do so, or the previous introduction by him of evidence on the subject, would not be good ground for refusing to admit it in evidence. The sufficiency of proof of fraud or mistake, if any were given, would be a question for the jury.

5. The defendant complains of several instructions embracing the general rule above stated that the contractor is entitled to recover the contract price upon proof that he had substantially performed the contract. The criticism is that the jury were not informed what was meant by the term substantial performance and that they were, therefore, left to infer, if they chose, that if the plant, as constructed, would do the work which the owner desired it to do, the plaintiff could recover as for completion, although it might, in many particulars, vary from the plans and specifications, or lack completion as the plans and specifications required. The defendant did not offer any instruction on this subject, as he might well have done. The definition of substantial performance is difficult to give in general terms. It is usually a question to be determined in each case with reference to the existing facts and circumstances. In 2 Elliott on Contracts, section 1607, it is defined as follows (p. 912):

"Substantial performance means that there has been no willful departure from the terms of the contract, and no omission of any of its essential parts, and that the contractor has in good faith performed all of its substantive terms. If so, he will not be held to have forfeited his right to a recovery by reason of trivial defects or imperfections in the work performed. If the omission is so slight that it cannot be regarded as an integral or substantive part of the original contract, and the other party can be compensated therefor by a recoupment for damages, the contractor does not lose his right of action; and this rule is peculiarly applicable in a case where the other party has received the benefit of what has been done, and is enjoying the fruits of the work. It is the sound and settled rule that the right of a party to enforce a contract will not be forfeited or lost by reason of technical inadvertence, or unimportant omissions or defects. A substantial performance must be established, in order to entitle the party claiming the benefit of the contract to recover; but this does not mean a literal compliance as to the details that are unimportant. There must be no willful or intentional departure, and the defects of performance must not pervade the whole or be so essential as substantially to defeat the object which the parties intend to accomplish. Whether, in any case, such defects or omissions are substantial, or merely unimportant mistakes that have been or may be corrected, is generally a

question of fact.'' This we believe to be a correct statement of the law on the subject. We cannot say that it was error to fail to give an instruction on the subject, in the absence of a request. It is doubtful if there was a substantial performance within the above rule and the case appears to be one in which such an instruction would be eminently proper.

Many other rulings were objected to, but as, upon another trial, the same questions are not likely to arise, we will not extend this opinion by a discussion of them, nor express any opinion as to their merit. If the cause proceeds upon the going down of the *remittitur,* the plaintiff should have leave to amend his pleadings as he may be advised.

The judgment and order are reversed.

Sloss, J., and Lawlor, J., concurred.

Hearing in Bank denied.