[Sac. No. 2719.   Department Two.—February 24, 1919.]

JAMES F. SMITH, Respondent, v. MATHEWS CONSTRUCTION COMPANY, Copartners, etc., et al., Appellants.

JUDGMENT—ACTION AGAINST COPARTNERSHIP AND OTHERS—APPEARANCE FOR ALL DEFENDANTS—DISSOLUTION OF PARTNERSHIP AFTER COMMENCEMENT OF ACTION—FORM OF JUDGMENT NOT ATTACKABLE.— Where in an action against an existing copartnership and several other persons counsel appeared for all of the defendants, including the copartnership, and defended for them as they had a right to do, defendants may not complain that the judgment against the partnership was erroneous because it was alleged in the answer that subsequent to the filing of the complaint the copartnership was dissolved by the death of one of the partners.

BUILDING CONTRACT—DEPARTURES FROM STRICT PERFORMANCE—FAILURE
TO DEMAND RE-EXECUTION—WAIVER.—In an action to recover the
balance due for work done and materials furnished in the con-
struction of improvements on a building, a ruling that there had
been a substantial performance of the contract is justified where
the departures from the strict performance of the work according
to the very letter of the specifications were known to the defend-
ants, and they failed to demand any re-execution of the work
or change in the materials.

ID.—MATERIAL FAILURES TO COMPLETE CONTRACT—RECOVERY UNDER
PLEADING.—In this action to recover the balance due for work done
and materials furnished in the construction of improvements on a
building, if the omissions on the part of the plaintiff had been mate-
rial and substantial failures to complete his contract, his complaint
would not have been sufficient to support a cause of action based
on *quantum meruit.*

ID.—FAILURE OF PERFORMANCE—CONSCIOUS DEVIATION.—Every conscious
deviation from the absolute terms of an agreement does not cause
a failure of performance.

ID.—SUBSTANTIAL PERFORMANCE—QUESTION OF FACT.—Substantial per-
formance is usually a question to be determined in each case with
reference to the existing facts and circumstances.

APPEAL from a judgment of the Superior Court of Sacra-
mento County.  Peter J. Shields, Judge.  Affirmed.

The facts are stated in the opinion of the court.

C. E. McLaughlin and C. P. McLaughlin, for Appellants.

John W. Johnston, Frank J. O'Brien, and W. A. Kelly, for
Respondent.

MELVIN, J.—Defendants appeal from a judgment for
something more than five thousand dollars, balance due for
work done and materials furnished in the construction of im-
provements on the Forum building, in Sacramento.  A lien on
the property was also adjudged.

The action was based on a contract between plaintiff and
defendant Mathews Construction Company and the work done
and materials furnished thereunder.  The contract price to be
paid for plaintiff's work and materials used for metal furring,
lathing, and corner-beads and plastering and cementing the
five-story addition to the building was $14,790, of which plain-

tiff alleged $11,021.50 had been paid, leaving a balance of $3,768.50, which defendants owed but refused to pay. There was a separately stated cause of action for extra work and material amounting in value to $1,596.29. All of the defendants, except the Mathews Construction Company, were sued as claiming some ownership and interest in the 'real property involved.

By their answer defendants admitted that at all times in the complaint mentioned the Mathews Construction Company was a copartnership composed of C. J. and Lettie P. Mathews, but denied that said copartnership was at any time owner of the building or the land on which it was located. There was also an allegation that the copartnership was dissolved by the death of Lettie P. Mathews in November, 1915 (a time long subsequent to the filing of the complaint). The contract and its terms were admitted to be as pleaded, but there were elaborate pleadings to the effect that the work had not been done according to the contract and that the materials were deficient in amount and quantity. There was an allegation that Forum Investment Company, C. J. Mathews, R. A. Herold, and Frank J. Ruhstaller were at all pertinent times the owners of the property. It was admitted that extra work had been ordered, but defendants averred that this work was done in a crude, improper manner. It was also pleaded that by reason of changes in the original plans necessitating the extra work, "plaintiff was relieved from the necessity of using material required by the original plans and specifications, of the value of about Five Hundred Dollars ($500.00) which was to be credited upon said extra work."

By way of counterclaim defendants alleged that at plaintiff's instance and because of his defective work they did extra work on the building to the value of $674.05; that by reason of the omission by plaintiff of materials required by the contract, they were entitled to judgment for $4,346.37; and that by reason of the improper and crude workmanship employed by plaintiff in applying the plaster and cement to the building, defendants had been damaged in the sum of twelve thousand dollars. There was a cross-complaint based upon the alleged insufficiency of the quantities of materials used by James F. Smith, the improper preparation and application of materials, and the poor workmanship. Damages were demanded in the sum of ten thousand dollars.

The judgment was for plaintiff's entire demand and against defendants on the counterclaim and cross-complaint.

Defendants contend that the judgment against the Mathews Construction Company was erroneous. The court found it to be true, as alleged in the answer, that the copartnership had been dissolved by the death of one of its members, which occurred subsequently to the execution of the contract and after the filing of plaintiff's liens. It is insisted that the court was powerless to render a judgment against a copartnership no longer existing. When the complaint was filed the Mathews Construction Company was an existing copartnership. It is true that by their answer defendants alleged the dissolution of the copartnership by death of one of the partners, but nevertheless counsel appeared for all of the defendants, including the copartnership, and defended for them as they had a right to do. (Sec. 1585, Code Civ. Proc.) They may not complain, therefore, at the form of the judgment.

The principal attack of appellants is directed against certain findings with reference to the manner of performance of the contract. It was found that the work was done in accordance with the plans and specifications; that the materials used were proper, and mixed in the specified proportions; and that the work was done in a good and workmanlike manner, as required by the contract, plans, and specifications, except as follows:

"Some of the plastered surfaces were not straight and true, and some of the angles were not worked plumb, the exact amount or number of which the evidence does not definitely disclose. This was caused by the act of the defendants in rushing the work and in requiring the plaintiff to place and apply second and third coats of plaster before previous coats of plaster were dry, and also from the fact that some of the lathing underlying said surface and said work was not laid on true and smooth by a previous contractor in charge thereof. That plaintiff notified defendants of such fact that such lathing was not so laid and defendants directed plaintiff to proceed with his work and to place the plaster upon such surfaces and upon such lathing so, as aforesaid, improperly laid on by such other and independent contractor.

"That the scratch coat was not carried to the floor but to within less than five inches thereof; and that such space was later filled in with the second or brown coat. This departure

from the terms of the contract was not willful or done with the purpose or intention to deceive or defraud the defendants, and it did not deceive them. It was done openly by the plaintiff, in good faith and in the belief that it was a performance of his contract, and was offered by him as a performance of the contract. It was in plain view of the defendants, who were constantly in and about the building, and they made no objection to this work, and it was at the time accepted by them as a performance of the contract. That the departures from the contract as herein stated were slight and unimportant and immaterial; that they were each and all known of by defendants and that such defendants were not deceived, defrauded or injured thereby.''

Appellants insist that the deviations from the strict letter of the contract (such, for example, as the failure in each room to carry the ''scratch coat'' clear to the floor at that part of the wall subsequently concealed by the baseboard) were intentional, willful violations of the agreement necessarily involving bad faith, and that the doctrine of substantial performance has no application. They also assert that such doctrine may only be invoked by pleading, and where, as here, plaintiff alleged full performance and the court found that there were any deviations, however slight, from strict performance on the part of the lien claimant, the judgment must be against him.

In support of the point last stated appellants cite such cases as *Herdal* v. *Sheehy*, 173 Cal. 163, [159 Pac. 422], and *Daley* v. *Russ*, 86 Cal. 114, [24 Pac. 867], which hold, in effect, that where one seeks to recover for the value of work done or material furnished in the partial performance of a contract, full performance of which has been prevented by the other party to the agreement, he must plead the excuse for failure of full performance. Undoubtedly, if the omissions on the part of the plaintiff were material and substantial failures to complete his contract, the pleading was not sufficient to support a cause of action based upon the *quantum meruit*. But the court held that there was a substantial performance of the contract, and the real question is whether or not that ruling was justified. It is not true, as appellants contend, that any conscious deviation from the absolute terms of the agreement causes a failure of performance. As Mr. Justice Shaw said in *Connell* v. *Higgins*, 170 Cal. 541, 556, [150 Pac. 769, 775]: ''The definition of substantial performance is difficult to give

in general terms. It is usually a question to be determined in each case with reference to the existing facts and circumstances." In the same opinion quotation is made from 2 Elliott on Contracts, section 1607, in which the learned textwriter uses the following language: "A substantial performance must be established, in order to entitle the party claiming the benefit of the contract to recover; but this does not mean a literal compliance as to the details that are unimportant. There must be no willful or intentional departure, and the defects of performance must not pervade the whole, or be so essential as substantially to defeat the object which the parties intend to accomplish. Whether, in any case, such defects or omissions are substantial, or merely unimportant mistakes that have been or may be corrected, is generally a question of fact." The contract itself was pleaded, and the complaint contained averments that the owners at all times were familiar with the work, and allegations amounting to a pleading of acceptance by them. The contract gave the architect power, in his discretion, to order any imperfect work re-executed and to demand that proper be substituted for improper material. Respondent contends, and we think correctly, that by failure of appellants to demand any re-execution of the work or change in materials, the departures from the strict performance of the work according to the very letter of the specifications were waived, and that the case is governed by the rule announced in *City Street Improvement Co.* v. *Marysville*, 155 Cal. 419, [23 L. R. A. (N. S.) 317, 101 Pac. 308] ; *American-Hawaiian Engineering etc. Co.* v. *Butler*, 165 Cal. 497, [Ann. Cas. 1916C, 44, 133 Pac. 280] ; *Connell* v. *Higgins, supra,* and similar cases. This seems to have been the view of the learned judge of the superior court whose opinion in this case, which covers all of the serious points of controversy, we quote as follows:

"The particulars in which substantial objection is made to the claim of plaintiff for payment for plastering done by him are:

"1. That the finish coat was not 'well troweled to give a good, smooth, hard, straight, and uniform surface,' as required by the specifications. Mr. Wieland says that no such objection can properly be taken to the work, and I would dispose of it upon this ground alone. If the objection was otherwise good, it would fail in this case from the fact that the plaintiff

was greatly rushed by the defendants in the performance of the work and from the further fact that if any such defects existed, they were plainly apparent to the defendants and should have been called to the attention of the plaintiff while he was doing the work and when he could have readily and inexpensively corrected them.

"2. That the surfaces were not made 'straight, true, and smooth, and all angles worked plumb' as required for the 'scratch coat' and that the 'brown coat' was not 'floated on true and level.' It is true that the finished job shows beam surfaces out of level, corners not sharp and angles not clean-cut and true, in many places throughout the job. This, I deem excused from the fact that the work was hurried, that the plasterer was required by the defendants to place successive coats before prior ones were dry, and by the further fact that these uneven conditions were largely caused by the way in which the lathing was done by another contractor, the work done by plaintiff having to be placed on such irregular lathing. These imperfections which are not substantial were plainly in view of defendants while plaintiff was doing his work and should have then been called to his attention.

"3. That the contract provided that the 'scratch coat' should be 'properly scratched and to extend to the floor' and that it is admitted that it was not carried entirely to the floor, but only just below the top of the baseboard. It came within about five inches from the floor. This space was filled in by the 'brown coat' and defendants afterward placed the baseboards over this work, and entered upon the use of the building. It would seem that this omission was of no practical injury to defendants. Mr. Wieland stated that he did not 'deem it a matter of any importance.' Defendants, by their conduct, seem to have so regarded it at the time. I feel that I can justly announce a like conclusion. Counsel for defendants cites the omission in this particular as a willful departure from the contract, which because it was willful was substantial. I do not so view it. Plaintiff did the work in plain view of the defendants and in that particular, I think, with entire good faith, offered it as a compliance with the contract. Defendants saw the work as offered and with every opportunity to object and demand a different execution made no objection and permitted plaintiff to go ahead and finish the work as he did. I think they have waived any objection they might have

made on this score, and that they accepted the work as offered. With reference to the foregoing objections of defendant, it should be recalled that they had many representatives constantly on and about the work. Mr. Mathews, one of the owners of the building, was constructing it. Mr. Herold, the supervising architect, was also a co-owner. In addition they also employed a superintendent, Mr. Basler, who was in constant attendance on the work at all the times at which plaintiff was employed.

"The contract between the parties provided:

" '*IMPROPER WORK:* Should any of the work be, in the opinion of the architect, executed with improper materials or workmanship, the contractor will, when required by the architect, during the progress of the work forthwith re-execute the same and substitute proper materials and workmanship; and in case of default of the contractor in so doing within five days after being notified, the owner is to have full power to employ other persons to re-execute the work, and the cost thereof is to be borne by the contractor.'

"In view of this provision, the constant attendance of defendants upon the work and the conspicuous character of the defects complained of and the ease with which they might have been remedied, such small imperfections should be considered as having been waived.

"4. It is claimed that the mixture as prepared and applied was deficient in plaster; that it contained too great a proportion of sand. This I have always regarded as practically the only issue in the case. During the trial the impression was made on me, and apparently on counsel for defendants, that the mixture was to be what is known as one and one-half to one for the 'scratch coat' and two to one for the 'brown coat,' and much argument has been had upon that assumption.

"This impression seems to have been entirely mistaken. The specifications do not directly provide the proportions of sand to plaster. What they do provide is this:

" 'The contractor must carefully observe all directions and precautions on the printed instructions from the manufacturers relating to the different materials used, and comply strictly with them in the execution of the work.'

"During the trial defendants introduced in evidence a circular of the manufacturers of the plaster used which pur-

ported to give the directions referred to in the specifications, and which Mr. Herold testified did give such directions. This was 'Defendants' Exhibit 9.' It provides under the heading 'Proportion for Mixing' 'Scratch Coat . . . 12 shovels sand to sack of 100 lbs.'

" 'Brown coat, wire lath, 20 shovels sand to sack of 100 lbs.'

"These proportions at the trial were assumed to produce a 'two to one mixture.'

"Mr. Wieland produced a circular which contained different instructions and testified that if that circular was the one applicable to this case, if it was followed that the plaster on the walls should give a composite analysis of 1.90 to 1. He analyzed many samples and found that they averaged about 2.26 to 1, which he said was distinctly a poorer mixture than 1.90 to 1. But the circular produced by him was not the one according to which the plaster was to have been mixed. It was to have been mixed according to the terms of the circular marked 'Defts. Ex. 9.' If mixed according to this formula a composite sample of the plaster on the wall should have analyzed 2.5 to 1. This, of course, would be a poorer plaster than that which plaintiff actually applied which was according to Mr. Wieland 2.26 to 1. So the plaster instead of being poorer than required by the specifications was considerably richer.

"With the settlement of this question, all my doubts in this case vanish. I have withheld decision and reopened the case because of a doubt as to whether the plastering not only in the richness of its proportions, but otherwise, was a good, practical, durable job. I feared that it was soft and crumbly, that it would not give good service and would at an early date, have to be expensively renewed. I wanted to know before requiring the defendants to pay for this work, that it was a good average commercial job from which they could get a long and valuable use. From Mr. Wieland's testimony, I am now satisfied on this point.

"After the fullest investigation, Mr. Wieland said it was much better than the average in quality and workmanship, that it was free from shrinkage cracks and it was well put on, that it was a substantial and durable job, that it was far above the average and he concluded by saying that he felt conscientious in saying that the job was a good one. I adopt his experienced and disinterested views, and adjudge it to be such."

Without entering upon an extended discussion of the testimony on that subject, it is sufficient to say that it supports the findings against the counterclaim of defendants.

No other matters require analysis, as the specifications of alleged error in the rulings of the court were based upon the same theories of defendants that have been discussed above.

The judgment is affirmed.

Lennon, J., and Wilbur, J., concurred.