OPINION
KOZINSKI, Circuit Judge:
We consider the standards applicable to the termination of a consent decree on grounds of substantial compliance.
BACKGROUND
William Rouser is a Wiccan. Despite Wicca’s relative obscurity, Rouser was not its only adherent in the California State Prison at Sacramento. In 1992, he petitioned on behalf of himself and some thirty fellow Wiccan inmates that the prison recognize Wicca as a bona fide religion and *1079 afford its followers the same rights accorded to inmates of other faiths. Specifically, Rouser sought to (1) possess Wiccan ritual items like candles, incense and Tarot cards; (2) access A Witches Bible Compleat when placed in administrative segregation; (3) use the prison chapel for Wiccan ceremonies; and (4) receive the ministry of á Wiccan chaplain.
When the prison denied his requests, Rouser filed a civil rights complaint in the Eastern District of California. After District Judge Karlton set the matter for trial, the parties entered into a comprehensive settlement agreement (the “1997 Agreement”). The agreement applied to “any institution under the jurisdiction of the California Department of Corrections (CDC) to which [Rouser] is assigned” and described how the prisons and their staff would accommodate Rouser’s religious needs.
Over the next 14 years, Rouser notified the court of various ways in which the CDC and its employees violated the terms of the 1997 Agreement in the three facilities where he was housed. Rouser alleged, for example, that officials suspended Wic-can services while permitting other religious services; precluded him from ordering religious items like candles, oil, incense and herbs; prevented inmates from timely attending Wiccan services; and disregarded his administrative complaints.
Judge Karlton eventually granted a preliminary injunction. In a 33-page order, he found that prison officials substantially burdened Rouser’s religious exercise by “[i]nhibiting [his] timely receipt of religious articles” and “[i]nhibiting group worship.” A year later, the parties entered into another settlement agreement, which the district court adopted as a consent decree (“2011 Decree”) and is at the heart of this appeal. The decree reaffirmed the promises the CDC made in the 1997 Agreement and provided Rouser with additional privileges: He was allowed to possess listed religious items in his cell; he was entitled to attend weekly “esbats” and eight annual “sabbats” at an outdoor religious activity area; and CDC employees would “develop a procedure that allows the volunteer Wiccan minister ... to obtain access to Wiccan group worship articles in a timely manner for use at Wiccan esbats and sabbats.” In addition, Rouser was permitted to bypass the informal, formal and first levels of appeal and file a second-level appeal directly with the warden or his designee to report any noncompliance with the 2011 Decree.
The decree provided that after one year, defendants could move for termination by showing that they had substantially complied with its terms. After approving the 2011 Decree, Judge Karlton transferred the case to the U.S. District Court for the Central District of California on the parties’ motion.
Several months after the 2011 Decree went into effect, Rouser filed a motion to enforce its terms and asked for a preliminary injunction. He argued that officials violated the 2011 Decree in at least five ways: by damaging a religious necklace in their custody; by canceling and suspending Wiccan services without a legitimate justification; by prohibiting Rouser from using candles in his worship; and by failing to construct an outdoor religious worship area. Most significantly, Rouser alleged that they screened and disregarded his direct appeals to the warden. Defendants denied or attempted to justify some of their actions, but didn’t contest Rouser’s allegations that his appeals weren’t being processed in accordance with the terms of the 2011 Decree. And they all but conceded that they violated the decree by denying Rouser access to candles.
The district court found that defendants had violated the 2011 Decree in two ways: *1080 by damaging the religious necklace and dismissing Rouser’s grievances before they reached the warden. The court reminded defendants to “adhere to the terms of the Decree” but didn’t order them to replace the necklace or grant any other relief. The court found no willful violation of the provision permitting Rouser to use candles— only a temporary prohibition due to a mis-communication that was later resolved. As ■to the remaining claims, the district court faulted Rouser for failing to provide sufficient evidence to meet his burden of proving noncompliance. Rouser, however, had provided a sworn declaration, a prison memorandum and a statement under penalty of perjury from another inmate to support his claims that the prison had no justification for canceling and suspending Wiccan services. Defendants presented their own sworn statements contradicting Rouser’s allegations, and the district court tacitly resolved the factual disputes in favor of defendants without an evidentiary hearing or even an acknowledgment that Rouser had presented contrary evidence.
Three months later, defendants moved to vacate the decree on grounds of substantial compliance. They relied on the declaration of Correctional Counselor Nathan Wilcox, who claimed that defendants “fully complied” with the 2011 Decree, but he discussed only some of its terms and said nothing about compliance with the other terms. See infra p. 1082. Nor did he claim that defendants had remedied the two violations the court had found just three months earlier. Wilcox relied on an internal prison memorandum that set forth procedures for facilitating Wiccan group worship. But that memorandum was dated October 2012 and thus predated the district court’s finding that defendants had frustrated Wiccan group worship by damaging the religious necklace and failing to give Rouser direct access to the warden for his grievances.
Rouser disputed that the prison complied with the 2011 Decree and sought an evidentiary hearing, claiming that he’d recently been prevented from ordering candles and incense. In their reply, defendants maintained that Rouser failed to “articulate any legitimate basis for extending this Court’s ... 2011 Order,” and asked the court to deny the motion without a hearing-or oral argument.
The court complied. It concluded in a minute order that “[defendants have demonstrated by a preponderance of the evidence that they have substantially complied with the terms of the settlement agreement.” The court didn’t mention its earlier finding that defendants had violated the 2011 Decree. Rather, the court found that Wilcox’s declaration and the outdated prison memo showed defendants took “significant steps to follow the settlement agreement” (emphasis added). Finding this sufficient to show substantial compliance, the court concluded that Rouser’s allegations of noncompliance, even if assumed to be true, were “insufficient to render Defendants substantially non-compliant” with the 2011 Decree.
DISCUSSION
We review for abuse of discretion the district court’s decision to terminate a consent decree. See Jeff D. v. Otter (Otter), 643 F.3d 278, 283 (9th Cir. 2011) (citing Jeff D. v. Kempthorne (Kempthorne), 365 F.3d 844, 850 (9th Cir. 2004)). We apply heightened deference to the district court’s discretionary decisions where it “has been overseeing complex institutional reform litigation for a long period of time.” Kempthorne, 365 F.3d at 850. Here, however, the court that vacated the consent decree had supervised it for only two years of the twenty-year history of the case. Neither our cases nor the PLRA require deference to a district court simply because it has *1081 managed institutional-reform litigation for two years. The dissent identifies no authority to the contrary. Diss. at 1093-94. Thus, we accord no special deference in reviewing its exercise of discretion.
I. Purpose and History of the 2011 Decree
Our case law instructs district courts deciding a motion to vacate a consent decree to first consider “the more general goals of the decree.” Otter, 643 F.3d at 288 (quoting Youngblood v. Dalzell, 925 F.2d 954, 960 (6th Cir. 1991)). Then the court should examine defendants’ entire “record of compliance.” Id. (quoting Freeman v. Pitts, 503 U.S. 467, 491, 112 S.Ct. 1430, 118 L.Ed.2d 108 (1992)). We have reversed a district court’s termination of a consent decree for failing to explicitly consider the “goals of the decree[]” and only evaluating compliance with individual action items. Id. at 289.
The district court overlooked the teachings of Otter. Nowhere in its terse minute order did it mention the defendants’ record of compliance — either with the 2011 Decree or its predecessor— “which over the course of the litigation has been far from exemplary.” Id. at 288. Nor did it analyze whether the purposes of the 2011 Decree had been “adequately served” by defendants. Id. at 289.
The dissent claims that the district court identified the purpose of the decree by explaining that Rouser initially brought suit for, and entered into a settlement that governs, his “right to practice his religion, Wicca.” See Diss. at 1096. But these passing observations don’t satisfy Otter’s requirement that a district court give “[explicit consideration [to] the goals of the deeree[].” 643 F.3d at 289. Nor do they comply with Otter’s requirement that the district court find that “those goals have been adequately served” before vacating the decree. Id.
This alone provides sufficient grounds for reversing the order vacating the decree. Id. But there’s much more. Because the case must be returned to the district court, we note numerous other errors so that they will not be repeated on remand.
II. Substantial Compliance
A. Definition
The district court didn’t evaluate whether defendants substantially complied with each of the 2011 Decree’s terms. Instead, it concluded that they “complied with the [2011 Decree]” as a whole. As such, it abused its discretion by applying law incorrectly. Id. at 283. Our cases do not treat consent decrees as monolithic commands with which defendants either comply or not. “Without question courts treat consent decrees as contracts,” United States v. Asarco, Inc., 430 F.3d 972, 980 (9th Cir. 2005), that have “the additional element of judicial approbation.” Smith v. Sumner, 994 F.2d 1401, 1406 (9th Cir. 1993). Like terms in a contract, distinct provisions of consent decrees are independent obligations, each of which must be satisfied before there can be a finding of substantial compliance. Accordingly, courts don’t release parties from a consent decree unless they have substantially complied with every one of its provisions.
In Hallett v. Morgan we affirmed the district court’s ruling that a prison substantially complied with the specific provisions of a consent decree requiring the facility to provide proper mental health and dental services to inmates. 296 F.3d 732, 749-50 (9th Cir. 2002). At the same time, we reversed its determination that the prison substantially complied with the “other medical care provisions” of the decree. Id. at 750-51. We also tacitly endorsed the Otter district court’s approach of separately evaluating whether defendants complied with individual “Action *1082 Items” in a consent decree. Otter, 643 F.3d at 285; see also Washington v. Penwell, 700 F.2d 570, 572 (9th Cir. 1983) (remanding to district court for failing to analyze compliance with one of several obligations in a consent decree).
The district court thus erred by applying the wrong legal standard for substantial compliance. The court was satisfied that the decree had been complied with because defendants had taken “significant steps to follow the settlement agreement.” See supra p. 1080. But merely taking significant steps toward implementing the decree falls far short of “substantial compliance.” While the term is not amenable to a “mathematically precise definition,” Otter, 643 F.3d at 284 (quoting Joseph A. v. N.M. Dep’t of Human Servs., 69 F.3d 1081, 1085 (10th Cir. 1995)), state law gives it meaning. Id. And in California a party is deemed to have substantially complied with an obligation only where any deviation is “unintentional and so minor or trivial as not ‘substantially to defeat the object which the parties intend to accomplish.”’ Wells Benz, Inc. v. United States, 333 F.2d 89, 92 (9th Cir. 1964) (quoting Connell v. Higgins, 170 Cal. 541, 150 P. 769, 775 (1915)).
This standard doesn’t require perfection, contrary to what the dissent suggests. Diss. at 1095. Deviations are permitted so long as they don’t defeat the object of the decree. But merely taking significant steps toward compliance comes nowhere near satisfying this exacting standard. Rather, the district court should have first found that defendants substantially complied with each of the decree’s terms for a substantial period before terminating the decree.
B. Application
The record did not contain sufficient evidence to permit the district court to conclude that defendants met the substantial-compliance standard. For one, the district court had found, just four months earlier, that defendants had not complied with provisions related to custody over group worship supplies and expedited administrative appeals. Wilcox says nothing in his declaration to indicate that defendants had remedied these defects. Given this uncontested record of violations and the absence of any evidence that the deficient performance had been remedied, the district court’s conclusion that there has been substantial compliance rested on a “clearly erroneous finding of material fact.” Otter, 643 F.3d at 283 (quoting Casey v. Albertson’s Inc., 362 F.3d 1254, 1257 (9th Cir. 2004)).
More significant still, defendants failed to establish altogether that they complied with several action items in the 2011 Decree. For example, defendants agreed to make copies of a master schedule of religious services that included the time and location of Wiccan events. Nothing in the record documents that they fulfilled this obligation. And what of Rouser’s ability to access his Wiccan bible in administrative segregation? Or his right to be released from confinement in time to attend full Wiccan services? We don’t know, because defendants presented no evidence and the district court made no findings as to these terms of the 2011 Decree. There is no indication that the district court was aware of these terms when it entered its order. Yet a consent decree may not be terminated without well-supported findings that all of its terms have been faithfully complied with for a substantial period.
The dissent doesn’t explain how defendants could possibly show substantial compliance with all .key obligations in a consent decree by only complying with some of those obligations. Nor does it explain how Rouser could “concedeG” that defendants complied with decree provisions that *1083 weren’t mentioned in their motion to vacate. Diss. at 1098. The dissent relies on stale documents — the 2012 internal prison memorandum and a year-old joint status report — to support its claim that the prison was complying with all decree provisions in 2018. Diss. at 1099-1100. That’s inconsistent with our caselaw requiring courts to examine the “record reflecting [prison] conditions as of the time termination is sought.” Gilmore v. California, 220 F.3d 987, 1010 (9th Cir. 2000). It’s also at odds with the dissent’s own warning that “past instances of non-compliance are of questionable relevance in deciding whether to vacate a consent decree.” Diss. at 1100.
In addition to these gaps in the record, the district court overlooked those of defendants’ claims that Rouser disputed. Specifically, Rouser alleged that he was only allowed one ritual outdoors. And he claimed that he wasn’t allowed to use the seven candles specified in the 2011 Decree or obtain incense — both of which were important components of outdoor group worship. Where there is a factual dispute about whether defendants substantially complied with a decree, the district court may not simply “examine the [existing] record for ‘findings.’” Gilmore, 220 F.3d at 1010. Rather, the court must take evidence on the current conditions at the prison. Id. As the dissent acknowledges, the district court didn’t follow this rule, even though Rouser contested “two relevant instances”' of defendants’ compliance. Diss. at 1097-98. The defendants’ alleged failures weren’t merely “trivial” deviations warranting a finding of substantial compliance. Connell, 150 P. at 775. If true, Rouser’s allegations would have documented material wmcompliance with the terms of the decree and thus precluded any finding of substantial compliance. Accordingly, the district court should have — but didn’t— conduct a hearing before deciding material factual disputes related to defendants’ compliance with the decree.
III. Denial of Due Process
The district court terminated the 2011 Decree at a time when Rouser wasn’t receiving notice of its orders. The court had granted Rouser’s request to proceed pro se on March 28, 2012 and had recorded his address as the California State Prison, Los Angeles County, in Lancaster. However, the docket was not updated to reflect the address change, and the court continued to send its orders to Rouser’s former counsel — almost two dozen over the course of two years. Each of those was returned to the district court as undeliverable.[1] Once back, a deputy clerk dutifully filed and docketed them. See Appendix A. But nobody bothered to correct the service address or resend the court’s orders to Rouser in prison.
Rouser wrote to the court on October 27, 2012, explaining that he was “pro per and the only way he has been finding out about the [court’s] hearing dates is from *1084 the response filing of the defendants.” If anyone read this statement on the first page of Rouser’s pleading, nobody bothered to find out why Rouser was not getting the court’s orders or implement the address change. The court’s orders continued to be sent to — and immediately returned from — Rouser’s former attorney’s address.
Rouser’s failure to receive the court’s orders prejudiced his ability to allege violations of the 2011 Decree. The court’s November 15, 2012 order instructed Rouser on the proper format under the local rules for submitting notices of additional violations. It also informed him that the court would disregard any noncompliant filings dated after October 9, 2012. Rouser had no way of knowing about this ruling. So he was unfairly denied the chance to refile his flawed notices and effectively oppose the motion to vacate the consent decree.
Had Rouser submitted his notices in the proper format, the district court would have been confronted with a host of additional allegations of non-compliance. Rouser claimed in his several defective filings that defendants deprived him of the Wic-can bible in administrative segregation; prevented him from applying for the volunteer chapel clerk position; and continued to deny him direct access to the warden for his grievances. If true, each of these claims would have amounted to a material violation of the 2011 Decree.
Most troubling is the district court’s cavalier response once it finally realized that Rouser had not been receiving its orders. Rouser, apparently unaware that the case was over, wrote to the court on April 12, 2013, explaining that he’d learned that all of the court’s orders had been sent to his former counsel. Rouser claimed that he had been “effectively denied all due process and basically [had] been forced to fly blind.” He specifically sought leave to appeal “[i]f the judge has granted the defendants’ motion [to terminate the decree]” and requested the district court send him past orders. On the same day, he sent a letter addressed to the clerk’s office, explaining that his former counsel left the case in 2006, that he was a “pro per plaintiff’ and that he had not received orders from the court, which denied him “all due process.” The docket does not reflect any response from either the court or the clerk’s office to Rouser’s letters.
On May 27, 2013, Rouser sent a strongly worded letter to the deputy state attorney general who served as counsel for defendants, with a copy to the court. In it, he declared that the court had ■ “refused to send [him] any of its orders concerning this case ... [w]hen it knows [he is] pro per and [has] been filing all motions and responses [himself].” Exasperated, Rouser wrote: “I am at a loss on how to get this court to send me copies of its orders .... I have [written to] the clerk as well and don’t know if I need to go to someone else or who else is it when the court will not send you rulings in your own case.”
The court finally sent a copy of its order terminating the decree to Rouser on June 7, 2013. It declined to give Rouser additional time to oppose the now-moot motion to vacate, reasoning that Rouser already -availed himself of the opportunity to respond to the motion. The court faulted Rouser for failing to keep it advised of his address and concluded that his failure to receive orders was due to his own oversight. The court, however, overlooked its own order of March 28, 2012 granting Rouser’s request to proceed pro se and recording his address as the Lancaster prison. Rouser has remained at that prison since. The failure to effectuate Rouser’s address change was thus the court’s fault, not Rouser’s.
*1085 This breakdown of communication between the court and Rouser is at loggerheads with the court’s obligation to alert pro se litigants that they are entitled to submit evidence when the district court is about to resolve a dispositive motion. Cf. Anderson v. Angelone, 86 F.3d 932, 935 (9th Cir. 1996). And it stands on its head the “special solicitude” we consistently afford pro se prisoners due to the lack of control they have over their mail. See Caldwell v. Amend, 30 F.3d 1199, 1201 (9th Cir. 1994). To this day, there’s nothing in the record indicating that anyone in the Central District of California has paused to question why so many returned orders are being docketed in this case. Rouser tried to bring the problem to the district court’s attention in multiple filings, all to no effect.[2] This raises doubts as to whether the judge or anyone else paid sufficient attention to Rouser’s pleadings. Because of this failure, Rouser was denied a fair opportunity to contest defendants’ motion to terminate the decree.
We are disappointed by the district court’s insouciance in this case. The court committed numerous errors in terminating a consent decree that had been carefully crafted over the course of two decades. The court applied the wrong legal standard and found substantial compliance without giving due attention to the various exacting obligations embodied in the decree, and without considering whether the purpose of the decree had been served. The court improvidently refused to hold an evidentiary hearing to resolve material factual disputes about whether defendants had complied with the decree. The court also encouraged noncompliance by finding that defendants had violated the consent decree, yet refusing to grant any meaningful relief.
In light of the court’s own findings, only four months earlier, that defendants had failed to comply with material aspects of the decree, and with no proof that those failures had been remedied, termination of the decree was clearly an abuse of discretion. Under no circumstances should the district court consider terminating a decree unless and until there has been a substantial period of substantial compliance — in this case no less than a year— with every one of its terms.
The district court’s protracted failure to correct Rouser’s address, and its repeated failure to re-send notices of orders that had been returned as undeliverable, raises even broader questions. Bluntly stated, the record documented in .Appendix A casts doubt on whether anyone in the Central District of California’s Clerk’s Office is paying attention to the important and sensitive process of providing parties with fair notice of the court’s orders. How can it be that the district court failed to implement the change of address for the delivery of orders after granting Rouser’s motion to proceed pro se, and then ignored almost two dozen orders that were returned to the court as undeliverable? Is the problem we note here limited to this case or does it reflect an absence of procedures designed to prevent and correct such errors in other cases? We find it inconceivable that a *1086 properly run clerk’s office would permit this to go on over the course of years.
We therefore VACATE the district court’s order terminating the consent decree, REINSTATE the 2011 Consent Decree and REMAND the case to the district court for further proceedings consistent with our opinion. Costs to Appellant.
Dissent by Judge Callahan
APPENDIX A

ORDER DATE & DOCKET NO. DATE RETURNED & DOCKETNO. ORDER CONTENTS

March 15,2012 Dkt. No. 548 April 24,2012 Dkt. No. 555 In chambers notice regarding partial joint settlement statement
July 18, 2012 Dkt. No. 557 July 26,2012 Dkt. No. 583 Order requiring further filings related to partial joint settlement statement
July 31,2012 Dkt. No. 559 August 24,2012 Dkt. No. 562 Order calendaring Rouser’s motion to enforce consent decree
August 24, 2012 Dkt. No. 561 September 10,2012 Dkt. No. 583 Order granting defendants’ request to extend response time
August 30, 2012 Dkt. No. 563 September 13,2012 Dkt. No. 583 In chambers order taking Rouser’s motion to enforce consent decree under submission
September 19,2012 Dkt. No. 566 October 4,2012 Dkt. No. 583 Order requiring response from defendants to notice of further violations of consent decree
*1087 APPENDIX A — Continued

ORDER DATE & DOCKET NO. DATE RETURNED & DOCKETNO. ORDER CONTENTS

September 27, 2012 Dkt. No. 568 October 22,2012 Dkt. No. 583 Order granting extension of time to defendants to respond to notice of further violations of consent decree
October 11,2012 Dkt. No. 570 October 25,2012 Dkt. No. 583 In chambers order taking notice of further violations of consent decree under submission
October 19,2012 Dkt. No. 574 December 7,2012 Dkt. No. 580 Order placing motion for injunction, evidentiary hearing and sanctions on court calendar
November 15,2012 Dkt. No. 577 December 18,2012 Dkt. No. 581 Order granting motion to enforce consent decree in part and instructing Rouser that future violations must be filed as separate motions
November 28,2012 Dkt. No. 579 December 7,2Q12 Dkt. No. 582 Order denying motion for injunction, evidentiary hearing and sanctions
February 1,2013 Dkt. No. 585 February 22,2013 Dkt. No. 590 Form order notifying defendants of deficiencies in their motion to vacate
*1088 APPENDIX A — Continued

ORDER DATE & DOCKETNO. DATE RETURNED & DOCKETNO. ORDER CONTENTS

February 1, 2013 Dkt. No. 586 February 22,2013 Dkt. No. 591 Form order striking deficient motion to vacate
March 13, 2013 Dkt. No. 594 June 12,2013 Dkt. No. 604 Order granting motion to vacate
March 18,2013 Dkt. No. 596 March 25,2013 Dkt. No. 598 Order denying as moot Rouser’s • request for hearing on motion to vacate
June 21,2013 Dkt. No. 605 August 1,2013 Dkt. No. 609 Rouser’s notice of appeal to the Ninth Circuit
July 1, 2013 Dkt. No. 607 August 9, 2013 Dkt. No. 610 Forwarding order from Ninth Circuit detailing appeal schedule and providing notice of past due docket fee
September 5, 2013 Dkt. No. 612 October 16,2013 Dkt. No. 615, 616 Form order rejecting Rouser’s motion to take judicial notice of peijury and fraudulent documents
October 15, 2013 Dkt. No. 614 November 26, 2013 Dkt. No. 619 Forwarding order from Ninth Circuit granting Rouser’s motion to proceed in forma pauperis

*1089
ORDER DATE & DOCKET NO. DATE RETURNED & DOCKETNO. ORDER CONTENTS

November 19,2013 Dkt. No. 618 January 14,2014 Dkt. No. 623 Forwarding order from Ninth Circuit assessing initial partial filing fee
December 18,2013 Dkt. No. 621 January 27,2014 Dkt. No. 624 Forwarding order from Ninth Circuit denying Rouser’s motion to take judicial notice of peijury and fraudulent documents

. Although the court substituted Rouser for a few of his attorneys when it granted his request to proceed pro se, the docket continued to show that Rouser was being represented by attorney Richard Bates. Rouser had retained Bates in 2004 to represent him during his proceedings in the Eastern District of California. Although Bates withdrew as counsel in 2006, he was not removed as counsel of record until after Rouser filed his appeal. The dissent claims that the withdrawal was conditioned on Rouser filing a separate order, which he never did. Diss. at 1100-01. But the district court's minute entry indicates that Bates was dismissed even absent the filing of an order for the court’s signature. In any case, the district court was well aware of Rouser’s pro se status, as it signed and filed his 2012 attorney-substitution request identifying him as proceeding “pro se.” Thus, despite knowing Rouser was pro se, the court delivered Rouser’s copy of its orders to Bates as if he were still Rouser's attorney.

. As discussed, in October 2012, Rouser filed a pleading indicating that he was only receiving notice of hearing dates from the “response filing of the defendants.” Then in April 2013, he wrote to the court and the clerk’s office explaining that he was a pro se plaintiff and had not received the court's orders, and was thus deprived of due process. When the district court and the clerk’s office remained silent, Rouser sent a letter to opposing counsel with a copy to the court, saying that he was "at a loss on how to get [the] court to send [him] copies of its orders.” All of these communications were docketed and filed but had no effect until June 7, 2013, when the court eventually sent Rouser a copy of the order terminating the decree.