NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 5 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

WILLIAM ROUSER,

  Plaintiff-Appellant,

 v.

THEO WHITE; et al.,

  Defendants-Appellees,
 and

E. W. MEADS, Protestant Chaplain; et al.,

  Defendants.

No.   22-55139

D.C. No.
2:11-cv-09123-RGK-JEM

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted April 9, 2024
Pasadena, California

Before:  SILER,[**] BEA, and IKUTA, Circuit Judges.
Dissent by Judge IKUTA.

  Plaintiff-Appellant William Rouser, a practitioner of Wicca (a pagan religion)

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

and inmate at Mule Creek State Prison (MCSP) in Ione, California, appeals an order of the U.S. District Court for the Central District of California that denied his motion for a preliminary injunction. Through his preliminary injunction motion, Rouser sought to enjoin Defendants-Appellees to provide him access to candles, incense, an altar, an altar cloth, and use of an open flame in a fire pit at MCSP. Rouser argued denial of access to and use of these items breached a binding consent decree and violated the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") and the First Amendment. Rouser now argues the district court abused its discretion when it denied his preliminary injunction motion.

The parties are familiar with the facts, so we recount them only as necessary. We have jurisdiction under 28 U.S.C. § 1292(a)(1). We affirm.

"We review a district court's denial of a preliminary injunction motion for abuse of discretion." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). "A district court abuses its discretion in denying a request for a preliminary injunction if it bases its decision on an erroneous legal standard or clearly erroneous findings of fact." *Earth Island Inst. v. Carlton*, 626 F.3d 462, 468 (9th Cir. 2010).

A finding of fact is clearly erroneous if it is "illogical or implausible," or without "support in inferences that may be drawn from the facts in the record." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 578 (1985). In this way, "[t]he clear error standard is significantly deferential," *Gov't of Guam v. Guerrero*,

2

11 F.4th 1052, 1059 (9th Cir. 2021), and it "plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently," *Anderson*, 470 U.S. at 573; *see also United States v. Hinkson*, 585 F.3d 1247, 1260 (9th Cir. 2009) (en banc) ("[O]ur review of a factual finding may *not* look to what we would have done had we been in the trial court's place in the first instance, because that review would be de novo and without deference."). Deference is due because "[i]t is for the trial court to resolve conflicts in the evidence." *Mayview Corp. v. Rodstein*, 620 F.2d 1347, 1353 (9th Cir. 1980). Indeed, the Supreme Court "frequently ha[s] emphasized [that] . . . '[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" *Amadeo v. Zant*, 486 U.S. 214, 226 (1988) (quoting *Anderson*, 470 U.S. at 574).

The district court identified the correct legal standard for considering whether to grant a motion for a preliminary injunction as set forth in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."). The district court then concluded that Rouser failed to establish "the most important factor" among the *Winter* factors: a likelihood of success on the merits of his claim

3

that the consent decree was breached and his RLUIPA and First Amendment claims. *See Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020).

We reject Rouser's argument that the district court's factual "findings about MCSP's fire safety and security policies" were clearly erroneous. In support of their opposition to Rouser's preliminary injunction motion, Defendants-Appellees submitted a declaration by Lance Eshelman, MCSP's Community Resources Manager. In this declaration, Eshelman declared that "[n]o inmate or religious group at MCSP is permitted to use fire for safety and security reasons," with "one exception," namely, "the Native American purification (sweat) ceremonies." In describing this exception to MCSP's general prohibition on fire pits, Eshelman declared that "Native American religious groups are permitted to use a fire pit to heat river or lava rocks," which "heated rocks are then used during the purification ceremony. The fire pit is tended to by a single inmate designated for the purpose of heating the rocks." Rouser relies upon a single sentence in Eshleman's declaration: "The fire pit is not used by the entire Native American congregation, *except at the beginning of the purification ceremony, when the congregation offers prayers and/or medicine to the fire*." Rouser avers this sentence demonstrates that the entire Native American congregation accesses fire as part of the purification ceremony, which contradicts the district court's factual findings that "[o]nly one Native American inmate is allowed near the fire," and that "[t]he fire pit is not used by the entire

4

Native American congregation." The problem with Rouser's argument is that the very next sentence in Eshelman's declaration provides that "[t]he Native Americans *do not use the fire pit or access open flame during their ceremonies*, as the heat for their ceremonies is generated from the rocks which were previously heated in the fire pit." At oral argument, Rouser stated that these sentences in Eshelman's declaration are "very hard to reconcile." On this point, we do not agree. These two sentences in Eshelman's declaration can be reconciled. That the Native American congregation "offers prayers and/or medicine to the fire" does not necessarily imply that the congregation assembles itself around the fire. Indeed, that a congregation makes offerings and prayers to a Christian tabernacle does not require the congregation closely to surround the tabernacle. We therefore see no basis for replacing the district court's construction of Eshelman's declaration with the construction Rouser prefers. *See Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 845 (1982) ("An appellate court cannot substitute its interpretation of the evidence for that of the trial court simply because the reviewing court 'might give the facts another construction . . . [or] resolve the ambiguities differently.'") (quoting *United States v. Nat'l Ass'n of Real Est. Bds.*, 339 U.S. 485, 495 (1950)); *see also United States v. Patayan Soriano*, 361 F.3d 494, 503 (9th Cir. 2004) ("So long as reasonable minds could differ, we cannot say that one of those minds is clearly erroneous."). Hence, we conclude that the district court's factual findings

5

regarding MCSP's fire safety and security policies were not clearly erroneous, as they were based on the district court's permissible interpretation of Eshelman's declaration.[1] *See Hinkson*, 585 F.3d at 1261; *Anderson*, 470 U.S. at 573–74.

Ultimately, Rouser fails to demonstrate that any of the district court's factual findings were clearly erroneous. Because Rouser "fail[ed] to meet th[e] threshold inquiry" of a likelihood of success on the merits of his claims, the district court acted within its discretion when it denied his motion for a preliminary injunction. *See Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (internal quotation marks omitted).

**AFFIRMED.**

---

[1] The dissent maintains that the district court did not "make any effort to interpret the language indicating that the Native American congregation as a whole uses the fire pit at the beginning of its purification ceremonies." We disagree. The district court found that "[o]nly one Native American inmate is allowed near the fire," that his "access [to the fire] is carefully monitored," and that he "uses the flame for the limited purpose of heating rocks, which are then transferred elsewhere for the actual ceremony." "Finally," the district court found, "[t]he fire pit is not used by the entire Native American congregation." Here, the district court quoted and expressly considered the same sentence of Eshelman's declaration that the dissent maintains it ignored.

IKUTA, Circuit Judge, dissenting:

William Rouser has been fighting for the right to practice his Wiccan faith in the California prison system for over thirty years. *See Rouser v. White*, 825 F.3d 1076, 1078–80, 1085 (9th Cir. 2016). Rouser first prevailed on his civil rights claim in 1997, resulting in a comprehensive consent decree. *Id.* at 1079. Over the next fourteen years, Rouser successfully complained of numerous violations of the consent degree, resulting in the prison entering into a second consent decree in 2011. *Id.* In 2016, the prison system attempted to dissolve the consent decree on the ground that the prison was in substantial compliance with its terms. *Id.* at 1080. In light of the prison's numerous violations of the decree, Rouser successfully prevented its dissolution. *Id.* at 1082, 1085.

Yet here we are again. It is undisputed that access to the element of fire is a central component of Wiccan religious practice. For this reason, the consent decree promises that Rouser "shall have access to a fire pit on the outdoor worship area on the sabbats," adding only that "[u]se of the fire pit shall be in accordance with institutional safety and security concerns, including applicable fire safety regulations."

Despite this promise, the Mule County State Prison (MCSP), part of the California prison system, argues that it properly prevented Rouser from having

access to fire, on the ground that *no* prisoners are allowed access to open fire in group ceremonies because of institutional safety and fire concerns. But the prison's own evidence belies its argument. Although a declaration by Lance Eshelman, a prison administrator, asserts that "no inmate or religious group at MCSP is permitted to use fire for fire safety and security reasons (safety of inmates and staff, and the security of the institution)," the declaration then states:

> The one exception to the rule prohibiting fire pits relates to the Native American purification (sweat) ceremonies. Native American religious groups are permitted to use a fire pit to heat river or lava rocks. The heated rocks are then used during the purification ceremony. The fire pit is tended to by a single inmate designated for the purpose of heating the rocks. *The fire pit is not used by the entire Native American congregation, except at the beginning of the purification ceremony, when the congregation offers prayers and/or medicine to the fire.* The Native Americans do not use the fire pit or access open flame during their ceremonies, as the heat for their ceremonies is generated from the rocks which were previously heated in the fire pit.

Decl. of Lance Eshelman ¶ 9 (emphasis added).

The key statement here is that "[t]he fire pit is not used by the entire Native American congregation, except at the beginning of the purification ceremony, when the congregation offers prayers and/or medicine to the fire." The first part of this sentence provides the general rule that "[t]he fire pit is not used by the entire Native American congregation." The next word, "except," indicates that there is an exception to the general rule—that is, that at some point, the fire pit *is* used by

2

the entire Native American congregation.  The clause introduced by "except" confirms that this exception to the general rule occurs at the beginning of the purification ceremony.  At that time, "the congregation offers prayers and/or medicine to the fire."  The use of the word "fire" indicates that there is fire in the fire pit.  The only fair reading of this sentence, therefore, is that at the beginning of the purification ceremony, the entire congregation has access to a fire in the fire pit.  The next sentence confirms this reading: it states that "[t]he Native Americans do not use the fire pit or access open flame during their ceremonies, as the heat for their ceremonies is generated from the rocks which were previously heated in the fire pit."  Reading these sentences together, the Native Americans use fire and the fire pit at the beginning of the purification ceremony, but not do not use fire or the fire pit during the service.

According to the majority, the statement that the Native American congregation "'offers prayers and/or medicine to the fire' does not necessarily imply that the congregation assembles itself around the fire," and suggests that the Native Americans' "use" of the fire pit is like a Christian congregation making "offerings and prayers to a Christian tabernacle." Maj. op. at 5.  But Christian worship practices, which generally do not require the use of open flames, shed little light on the practices of Native American congregations.  Although we do not

know how closely the Native American congregation gathers around the fire pit at the beginning of the ceremony, the declaration's statement that during the ceremony the Native Americans do not use the fire pit or access open flame at all strongly implies that they do both at the beginning of the ceremony.

More important, the district court did not even consider the majority's reading, much less adopt it. The district court did not discuss the declaration's exception clause at all, or make any effort to interpret the language indicating that the Native American congregation as a whole uses the fire pit at the beginning of its purification ceremonies. This was error. *See Myers v. United States*, 652 F.3d 1021, 1036 (9th Cir. 2011); *see also Martinez-Gonzalez v. Elkhorn Packing Co., LLC*, 25 F.4th 613, 625 (9th Cir. 2022) (holding that "where, as here, we are firmly convinced the district court overlooked key facts, it is our duty to reverse"). Because of this, it is the majority that "substitute[s] its interpretation of the evidence for that of the trial court" by adopting a construction of the declaration that the district court did not. *Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 857 (1982).

The district court's conclusion that Rouser did not have a likelihood of success on the merits of his breach of Consent Decree, RLUIPA, and First Amendment claims was based on its erroneous factual finding that the MCSP did

4

not allow any prisoners access to open flames. Therefore, I would reverse and remand to the district court.